Michael J. Ioannou (SBN 95208)
Lita M. Verrier (SBN 181183)
Wendy C. Krog (SBN 257010)
ROPERS, MAJESKI, KOHN & BENTLEY
50 West San Fernando Street, Suite 1400
San Jose, CA  95113-2429
Telephone:  (408) 287-6262
Facsimile:  (408) 918-4501
Email:  michael.ioannou@rmkb.com;
lita.verrier@rmkb.com; wendy.krog@rmkb.com

Attorneys for Defendant
MAXIM INTEGRATED PRODUCTS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CARL JASPER,<br><br>                    Plaintiff,<br><br>          v.<br><br>MAXIM INTEGRATED PRODUCTS, INC., a Delaware Corporation; DOES 1 to 10, inclusive,<br><br>                    Defendants. | CASE NO.<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA** |

**TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. § 1441(a), Defendant MAXIM INTEGRATED PRODUCTS, INC. ("Maxim"), hereby removes the above-entitled action from the Superior Court of the State of California in and for the County of Santa Clara, to the United States District Court for the Northern District of California based on the following facts:

1.      On or about December 10, 2014, Plaintiff CARL JASPER filed an action in the Superior Court of California in and for the County of Santa Clara, entitled *Carl W. Jasper v. Maxim Integrated Products, Inc., et al.*, Case No. 114CV274265 ("the State Court Action").  A

4832-6625-2577.1

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1   copy of the Summons and Complaint are attached hereto as **Exhibit A.**

2       2.      The Complaint pleads claims that arise under federal law.  While the Complaint

3   alleges only state law claims, 28 U.S.C. § "1331 also confers jurisdiction when an issue of federal

4   law undergirds a claim otherwise based in state law." *County of Santa Clara v. Astra USA, Inc.,*

5   401 F. Supp. 2d 1022, 1028 (N.D. Cal. 2005).  Such a state law claim may be removed to federal

6   court if it meet certain conditions, namely, "(1) it must raise a stated federal legal issue, (2)

7   determination of the federal issue must be necessary to resolution of the claim, (3) the federal

8   issue must be actually disputed, (4) the federal issue must be substantial, and (5) the federal court

9   must be able to entertain the claim "without disturbing any congressionally approved balance of

10   federal and state judicial responsibilities." *City of Santa Clara v. Astra USA, Inc.,* 401 F. Supp.

11   2d at 1025, citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 125

12   S.Ct. 2363, 2366-68, 162 L.Ed.2d 257 (2005).  Moreover, if federal jurisdiction lies on any one

13   state claim, the federal court has supplemental jurisdiction of any other purely state claims

14   pursuant to 28 U.S.C. § 1441(c).

15           **The Complaint Raises Federal Issues Which Are Essential to Plaintiff's Claims**

16       3.      The Complaint seeks damages relating to alleged unpaid "wages" consisting of

17   Maxim stock options Jasper allegedly was barred from exercising as a former Maxim employee,

18   after Jasper's employment terminated in February 2007.  Jasper has, however, purposely pleaded

19   to avoid federal court.  Although misstated or entirely omitted from the Complaint, it is plain

20   from prior federal litigation and a prior Delaware derivative action (of which the Court may take

21   judicial notice, see Request for Judicial Notice ("RJN") filed herewith), that the stock option

22   grants and exercises Jasper is now seeking were the subject of the federal judgment which

23   included an injunction against him.  See *SEC v. Jasper,* Case No. C 07-06122 JW, United States

24   District Court for the Northern District of California.  Thus, federal issues, namely the federal

25   judgment and injunction prohibiting Jasper from violation federal securities laws are "essential to

26   the claim." *Los Angeles Police Protective League v. City of Los Angeles,* 314 F. App'x 72, 74

27   (9th Cir. 2009) (citing *Grable* prongs for federal jurisdiction and holding that federal jurisdiction

28   lies where a federal question is "essential to the claim.").  The trial court's judgment was affirmed

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

**NOTICE OF REMOVAL**

1   on appeal in *SEC v. Jasper*, 678 F.3d 1116 (9th Cir. 2012).  The amended judgment is attached as

2   Exhibit 1 to the RJN.  The Ninth Circuit opinion is attached as Exhibit 2 to the RJN.

3       4.        Additionally, the Complaint invokes federal securities laws which are subject

4   exclusively to federal jurisdiction as they have res judicata or federal preclusion effect on some or

5   all of the causes of action in the Complaint, and thus invoke the "artful pleading" doctrine as

6   articulated in *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69

7   L.Ed.2d 103 (1981), and *Lippitt v. Raymond James Fin. Servs.*, 340 F.3d 1033, 1035 (9th Cir.

8   Cal. 2003).

9       5.        The Complaint alleges that Jasper was hired by Maxim in 1998 and was promoted

10   to Maxim's Chief Financial Officer and Vice-President in April 1999.  Complaint, ¶ 5.  Jasper

11   alleges that as Maxim's CFO, he received "stock options as rewards for past performance." ¶ 6.

12   Jasper alleges that beginning in or about April 2006, "It was discovered that in past years Maxim

13   had issued backdated stock options without properly expensing them …" ¶ 8.  Jasper further

14   alleges that "as a result of the allegations of backdating options in violation of various provisions

15   of the securities laws, JASPER resigned his employment at the Board of Director's request

16   effective January 31, 2007, and as a result of JASPER's resignation, Maxim and JASPER entered

17   into a written severance agreement[1] and release as of February 2, 2007 which … specified that

18   JASPER had been granted a number of Vested Options and Vested Restricted Stock Units as part

19   of his severance." ¶ 9.  Jasper alleges that beginning on April 16, 2008 he "attempted to exercise

20   his options which were vested and guaranteed in the [Severance Agreement], but that MAXIM

21   refused to honor said agreement and allow JASPER to exercise his options and cash out his

22   vested options and vested restricted stock units." ¶ 11.  The Complaint states causes of action for

23   breach of contract, breach of the covenant of good faith and fair dealing, failure to pay wages,

24   conversion, fraud, negligent misrepresentation, unfair business practices, and unjust enrichment

25   as a result of Maxim's alleged refusal to permit Jasper to exercise stock options.

26       6.        The crux of Jasper's overly-simplified and deliberately misleading Complaint is

27

---

[1] Jasper does not attach the Severance Agreement to the Complaint and the Complaint misstates

28   and/or omits several provisions of the Severance Agreement.

4832-6625-2577.1

- 3 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1   his assertion that he was entitled to exercise "a number of Vested Options and Vested Restricted

2   Stock Units as part of his severance." Complaint, ¶ 9:20-21.  The Complaint misstates and omits

3   facts surrounding his subject resignation and the stock option backdating[2] which are essential to

4   his claims.  As summarized by the Ninth Circuit, the following facts were previously adjudicated

5   by a federal court relative to Jasper's Complaint herein:

> Maxim is a semiconductor company listed on the NASDAQ stock
> exchange.  It is therefore required to file with the SEC Form 10-Q
> quarterly reports and Form 10-K annual reports, both of which must
> include audited financial statements, prepared in accordance with
> GAAP.  See 15 U.S.C. § 78m.  From 1999 until 2007, Jasper was
> Maxim's Principal Accounting Officer, CFO, and Vice President,
> and he was responsible for Maxim's accounting, including the
> accuracy of its financial statements and internal controls. . . . . . **The
> evidence showed that, from 2000 through 2005, Maxim
> employees and officers, including Jasper, regularly backdated
> stock options granted to employees and directors, and that they
> created false paperwork to conceal the true grant dates for
> those options.** . . . In September 2006, following an internal
> investigation prompted by an analyst's report, Maxim announced
> that it was unable to file timely periodic reports because of the
> backdating investigation.  In January 2007, both Jasper and CEO
> Gifford resigned.  After a lengthy investigation, on September 30,
> 2008, Maxim announced that '[p]reviously filed financial
> statements for our fiscal years ended in 1997 through 2005 . . .
> should no longer be relied upon,' and that earnings for those years
> had to be restated.  In the restated document, known as the 2006 10-
> K, Maxim disclosed an $838.3 million reduction in its pre-tax
> income for the period 2000-2005, which resulted primarily from the
> inclusion of $515 million in additional pre-tax expenses incurred as
> a result of stock-based compensation.  Of the $515 million in
> misstated compensation expenses, the SEC's expert accountant
> testified that Maxim's operating income for fiscal years 2003, 2004,
> and 2005 alone had been overstated by a minimum of $135 million
> and as much as $357 million due solely to failure to recognize the
> true expense of unrecorded, backdated stock options. . . . . **Jasper
> was the CFO of Maxim during this entire period, and, on
> appeal, he does not dispute his knowledge of or involvement in
> this fraudulent scheme.  Perhaps that is because the evidence is
> overwhelming.**

24   *SEC v. Jasper*, 678 F.3d at 1120-1121.  See RJN, Exh. 2.  (Emphasis added).  Contrary to the

25   adjudicated facts as noted by the Ninth Circuit relating to his wrongdoing while an employee of

26   Maxim, Jasper attempts to mislead the court by alleging that he "excelled at his duties"

---

[2] *SEC v. Jasper*, 678 F.3d at 1119-20 provides a brief explanation of stock option backdating.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1  (Complaint, ¶ 5) and that he "was at all times a loyal and capable employee of MAXIM." ¶ 7.

2        7.     As noted above, the Ninth Circuit's recitation of facts followed an appeal of the

3  November 5, 2010, judgment entered against Jasper by the Northern District of California.  In the

4  underlying case, Jasper was found liable of civil fraud and securities violations relating to the

5  backdating of Maxim stock options from 2000 through 2005.  Jasper was ordered to pay a

6  $360,000 civil penalty to the SEC, as well as $1,869,639 in restitution to Maxim "as forfeiture of

7  bonuses and stock-sale profits."[3]  See Amended Judgment, p. 2:17-3:1, RJN, Exh. 1.  Jasper was

8  also permanently enjoined from violating federal securities laws by:

      (1)     employing any device, scheme, or artifice to defraud;

      (2)     making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

      (3)     engaging in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of the securities of any issuer, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange.

17  Amended Judgment, 3:11-25.

18        8.     In a related Delaware derivative action entitled *Ryan v. Gifford*, an action

19  purportedly brought on behalf of Maxim relating to the backdating issues, the Stipulation of

20  Settlement resulted in, among other things, Jasper forfeiting 97,363 shares of Maxim vested and

21  unexercised stock options granted on June 17, 1998, that his Complaint now seeks to cash in.  See

22  Stipulation of Compromise and Settlement, RJN, Exh. 3.

23        9.     Conveniently, the Complaint entirely omits all facts relayed above relating to the

24  federal SEC action and judgment against him or the Delaware derivative action, both of which are

25  essential to his claims that he was entitled to exercise his stock options, thereby purchasing the

26  securities of Maxim.  It is well settled that a plaintiff cannot "avoid federal jurisdiction by

27

28  _____

[3] The restitution has never been paid.

4832-6625-2577.1

- 5 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    omitting from the complaint allegations of federal law that are essential to the establishment of

2    his claim." *Lippitt v. Raymond James Fin. Serv.*, at 1041 (9th Cir.2003) (internal quotation marks

3    omitted).

4         10.    Based on the foregoing history, the instant case raises the following federal legal

5    issue:  whether Jasper's present assertion that he was entitled to exercise stock options to which

6    he was, in fact, never entitled or which he forfeited pursuant to the settlement in the Delaware

7    derivative action triggers the federal injunction prohibiting him from "(1) employing any device,

8    scheme, or artifice to defraud; 2) making any untrue statement of material fact or omitting to state

9    a material fact …; or (3) engaging in any act, practice, or course of business which operates or

10   would operate as  a fraud or deceit upon any person, in connection with the purchase[4] or sale of

11   the securities of any issuer …".

12        11.    <u>Jurisdiction</u>:  Thus, the underlying SEC investigation relating to federal securities

13   violations, the resulting federal action, *SEC v. Jasper*, the subsequent judgment against Jasper,

14   and his forfeiture of Maxim shares undergirds Jasper's entire complaint.  Whether the

15   Complaint's misrepresentations and omissions trigger the federal injunction or whether Jasper is,

16   in fact, entitled to damages for the alleged breach of the subject Severance Agreement (which was

17   entered into as a direct result of the investigation of the backdating) are questions of federal law

18   which are substantial enough to warrant federal-question jurisdiction.  Finally, interpretation of

19   the federal injunction may significantly affect federal interests, namely, the Court's ability to

20   enforce its own orders.  This case is therefore one that arises under Federal law and is a case over

21   which this Court has original jurisdiction under 28 U.S.C. § 1331 and may be removed to this

22   Court by Maxim pursuant to the provisions of 12 U.S.C. § 1441(a).

23        12.    <u>Intradistrict Assignment</u>.  Pursuant to Civil L.R. 3-2(c), this matter arises out of

24   Santa Clara County and, therefore, assignment to the San Jose Division is appropriate.

25        13.    Paragraph 1 of the Complaint alleges that Plaintiff "is an individual who at all

26

27   [4] Of course, Jasper's attempts to exercise the subject stock options are an attempt to purchase
     securities of Maxim.

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1   times relevant herein, was a resident of San Jose, Santa Clara County, California, and thus,

2   plaintiff is a resident of this district.

3       14.     Formal service of process of Plaintiff's Summons and Complaint was completed

4   as of Maxim's January 2, 2015, execution and return of the CCP § 415.30 Notice and

5   Acknowledgment of Receipt.  Fewer than 30 days have elapsed prior to the filing of the notice of

6   removal, in accordance with 28 U.S.C. § 1446(b).

7       15.     The documents in the attached **Exhibits A and Exhibit B** constitute all the

8   process, pleading, and supporting materials filed in the State Court Action.  28 U.S.C. § 1446.

9       16.     For the reasons stated above, Maxim hereby removes the above-entitled action.

10  Dated:  February 2, 2015                    ROPERS, MAJESKI, KOHN & BENTLEY

11

12                                     By: /s/ Michael J. Ioannou

13                                         MICHAEL J. IOANNOU
                                           LITA M. VERRIER

14                                         WENDY C. KROG
                                           Attorneys for Defendant

15                                         MAXIM INTEGRATED PRODUCTS,
                                           INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

- 7 -

**NOTICE OF REMOVAL**

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

REVISED
FILED

DEC 10 2014

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
MAXIM INTEGRATED PRODUCTS, INC., a Delaware Corporation; Does
1 to 10, inclusive.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CARL W. JASPER

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | CASE NUMBER: *(Número del Caso):* |
|---|---|
| The name and address of the court is: Santa Clara County Superior Court *(El nombre y dirección de la corte es):* 191 North 1st Street | 1 1 4 C V 2 7 4 2 6 5 |
| San Jose                    CA    95113 | |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daniel Ray Bacon                           415 864-0907                    J05866
234 Van Ness Avenue
San Francisco   DEC 10 2014   DAVID H. YAMASAKI   CA    94102
DATE:                                  Chief Executive Officer, Clerk   Clerk, by                                    , Deputy
*(Fecha)*                                                              *(Secretario)*                                 *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | CEB | Code of Civil Procedure §§ 412.20, 465 www.courtinfo.ca.gov |

1  Daniel Ray Bacon, Esquire, SB # 103866
   LAW OFFICES OF DANIEL RAY BACON
2  234 Van Ness Avenue
   San Francisco, California 94102-4515
3  Telephone: (415) 864-0907
   Facsimile: (415) 864-0989
4
   Attorneys for Plaintiff
5  CARL W. JASPER

ENDORSED
FILED

DEC 10 2014

6                SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                      COUNTY OF SANTA CLARA

8                        UNLIMITED JURISDICTION

9
   CARL W. JASPER                          )     Case No. 114CV274265
10                                         )
              Plaintiff,                    )     COMPLAINT FOR DAMAGES AND
11                                         )     REQUEST FOR JURY TRIAL
   v.                                      )
12                                         )
   MAXIM INTEGRATED PRODUCTS, INC.,        )
13 a Delaware Corporation; DOES 1 TO 10,   )
   inclusive,                              )         BY FAX
14                                         )
              Defendants.                   )
15 _____)

16

17

18

19

20
   FIRST CAUSE OF ACTION: [1] BREACH OF WRITTEN CONTRACT; SECOND CAUSE
21 OF ACTION: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
   RELATED TO WRITTEN CONTRACT; THIRD CAUSE OF ACTION: FAILURE TO PAY
22 WAGES; FOURTH CAUSE OF ACTION: CONVERSION;  FIFTH CAUSE OF ACTION:
   FRAUD; SIXTH CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION; SEVENTH
23 CAUSE OF ACTION: UNFAIR BUSINESS PRACTICE (CALIFORNIA BUSINESS AND
   PROFESSIONS CODE §17200); EIGHTH CAUSE OF ACTION: UNJUST ENRICHMENT

24

25

26

27

28

JASPER'S COMPLAINT

1      PLAINTIFF CARL W. JASPER  (hereinafter "JASPER") complains and alleges as

2  follows:

3                    **FACTS COMMON TO ALL CAUSES OF ACTION**

4      1. Plaintiff Carl W. Jasper ("JASPER") is an individual who at  all times relevant

5  herein, was a resident of San Jose, Santa Clara County, California and was previously an

6  employee of Defendant Maxim Integrated Products, Inc.

7      2. Defendant Maxim Integrated Products, Inc., is a Delaware Corporation, doing

8  business as Maxim Integrated Products, Inc.,  (hereinafter, "MAXIM") with its principal place

9  of business located in the City of San-Jose, County of Santa Clara, California.

10      3. Plaintiff JASPER is ignorant of the true names and capacities of defendants sued

11  herein as Does 1-10, inclusive, and, therefore, sues these defendants by such fictitious names.

12  JASPER will amend this complaint to allege their true names and capacities when ascertained.

13  JASPER is informed and believes and thereon alleges that each of these fictitiously named

14  defendants is responsible in some manner for the occurrences herein alleged, and that JASPER's

15  injuries as herein alleged were proximately caused by the aforementioned defendants.

16      4.  JASPER is informed and believes and thereon alleges that at all times herein

17  mentioned each of the defendants was the agent and employee of each of the remaining

18  defendants and, in doing the things hereinafter alleged, was acting within the course and scope

19  of such agency and employment.

20      5. Plaintiff JASPER, a Certified Public Accountant, was hired by Defendant MAXIM in

21  May, 1998 as a Corporate Controller.  Plaintiff's duties consisted of being the chief accounting

22  officer who was responsible for Maxim's financial statements, general ledger, cost accounting,

23  accounts payable, accounts receivable, fixed assets, tax compliance, treasury, and most

24  accounting duties of Defendant Maxim's domestic and foreign subsidiaries.   Plaintiff excelled

25  in his duties, uncovered fraud in one of Defendant's subsidiaries, and was promoted to

26  Defendant's Chief Financial Officer and Vice-President of MAXIM in April 1999.

27      6. Plaintiff JASPER, as Defendant's Chief Financial Officer and Vice-President became

28  responsible for managing the financial risks of Defendant MAXIM and conducted production,

JASPER'S COMPLAINT                          1

1   sales and financial planning and record keeping and financial reporting to the Chief Executive

2   Officer and MAXIM's Board of Directors.

3         7. As Defendant's Chief Financial Officer, Plaintiff received raises commensurate with

4   other Maxim vice presidents and stock options as rewards for past performance.  Plaintiff was at

5   all times a loyal and capable employee of MAXIM.

6         8. Beginning in approximately April 2006, Maxim undertook an internal review of

7   Maxim granting processes with regards to officer grants in response to recently published

8   articles concerning potential backdating of officer stock option grants by various companies.

9   During the following months in 2006, Maxim established a special committee to expand the

10  review to include all Maxim grants of employee options.  It was discovered that in past years

11  Maxim had issued backdated stock options without properly expensing them at which time

12  Maxim ceased to submit further required filing with the Securities and Exchange Commission

13  filings resulting in the Securities and Exchange Commission instituting legal action against

14  Maxim and its officers.

15        9. As a result of the allegations of backdating options in violation of various provisions

16  of the securities law, JASPER resigned his employment at the Board of Director's request

17  effective January 31, 2007 and as a result of JASPER's resignation, Maxim and JASPER

18  entered into a written severance agreement and release as of February 2, 2007 which provided

19  for payment to JASPER for his W-2 income and salary which was paid on or about February 2,

20  2007 and specified that JASPER had been granted a number of Vested Options and Vested

21  Restricted Stock Units as part of his severance.   The agreement further specified that "Nothing

22  in this settlement agreement shall prevent Jasper from hereafter exercising any right with respect

23  to vested Maxim stock options and Maxim common stock to be issued upon vesting and

24  exercise of restricted stock units that arose prior to the date of this Agreement, but the exercise

25  and sale of which were prohibited by the terms of the 'blackout' instituted by Maxim

26  commencing in September 2006 pursuant to the terms of that 'blackout.'  Jasper's rights with

27  respect to such exercises and eventual sale shall be the same as those of all Maxim employees

28  whose employment with Maxim terminated during this blackout period, including the right to

JASPER'S COMPLAINT                    2

1   exercise such Options and RSU's by September 30, 2007 or by any other extension provided by

2   Maxim or its Board of Directors in the future to other Maxim employees or former Maxim

3   employees."  Other employees of Maxim were offered several buy back or goodwill payments

4   for options that were expiring during the "blackout" period, however, JASPER was given no

5   such offers and was treated differently than other similarly situated Maxim employees.

6       10.  As part of the severance agreement JASPER was prohibited from exercising his

7   rights with respect to these vested stock options and vested restricted stock units during a

8   "blackout" time period of two years whereby MAXIM could not trade on the NASDAQ Stock

9   Market from September 23, 2006 to approximately October 2, 2008.

10      11.  Beginning on April 16, 2008 and several times thereafter, JASPER attempted to

11   exercise his options which were vested and guaranteed in the above-referenced agreement, but

12   MAXIM refused to honor said agreement and allow JASPER to exercise his options and cash

13   out his vested options and vested restricted stock units.  MAXIM responded to JASPER's

14   attempts to exercise his options and resolve the issues by denying his requests and giving

15   JASPER several extensions of time to exercise the options.   MAXIM and MAXIM's agents

16   gave extensions of time and entered into specific tolling agreements with JASPER for JASPER

17   to exercise his options thereafter up to and including December 14, 2014.

18

19                        FIRST CAUSE OF ACTION
                          BREACH OF CONTRACT
20             (Failure To Pay Stock Options and Restricted Stock Units)

21      12.  Plaintiff JASPER hereby adopts and incorporates by reference paragraphs 1 through

22   11, inclusive of this complaint, and makes them a part of this instant cause of action as though

23   fully set forth herein.

24      13.  On or about February 2, 2007 Plaintiff JASPER entered into a written agreement

25   with Defendant MAXIM regarding the terms of his severance from MAXIM, which clearly

26   outlined the stock options and unrestricted stock units which JASPER could exercise as well as

27   defining other terms and conditions existing between the parties.

28      14.  Plaintiff JASPER fully and completely performed all the terms of the aforesaid

JASPER'S COMPLAINT                    3

1   agreement to be performed by JASPER, including all conditions, covenants, and promises

2   required on his part to be performed in accordance with the terms and conditions of the contract.

3       15.  Despite JASPER's full and complete performance of all the terms of the aforesaid

4   agreement to be performed by him, Defendant MAXIM breached said agreement, including but

5   not limited to the agreement that JASPER would be given the right and opportunity, as was

6   offered to all other Maxim employees, to exercise his options and cash out his vested stock

7   options and vested restricted stock units.

8       16.  JASPER and JASPER's agents repeatedly requested that Defendant honor its

9   contract with JASPER and allow him to exercise his options, but MAXIM has refused to honor

10  said agreement, has threatened JASPER with legal action, and continued to breach the

11  agreement.

12      17.  As a proximate result of Defendant MAXIM's unlawful breach of its written

13  contract, as aforesaid, PLAINTIFF JASPER has suffered damages, including the costs and

14  attorney fees he has been forced to incur and certain other incidental damages, all according to

15  proof at trial.

16      WHEREFORE, Plaintiff JASPER prays for judgment against Defendant MAXIM as

17  hereinafter set forth;

18                    SECOND CAUSE OF ACTION
        BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
19

20      18.  Plaintiff JASPER hereby adopts and incorporates by reference paragraphs 1 through

21  17, inclusive of this complaint and makes them a part of their instant cause of action as though

22  fully set forth herein.

23      19.  Implied by law into Plaintiff's agreement with Defendant MAXIM is, at all times

24  relevant hereto, a covenant of good faith and fair dealing by which said Defendant promised to

25  give full cooperation to Plaintiff in its performance under said agreement and to refrain from any

26  act which would prevent or impede Plaintiff JASPER from performing all of the conditions of

27  the agreement to be performed by him, and enjoying the fruits of said contract.  Specifically,

28  said Covenant of Good Faith and Fair Dealing required Defendant to fairly, honestly and

reasonably perform the terms and conditions of the agreement, including but not limited to act in good faith when administering benefit programs, including vested and earned stock options and vested restricted stock units as specified in the written agreement.  With respect to stock option compensation, the Covenant of Good Faith and Fair Dealing requires MAXIM to insure that JASPER would be able to exercise his options outside the blackout period without any interference or denial of such rights from MAXIM.

20.  Defendant MAXIM breached its implied duty of good faith and fair dealing in its agreement with Plaintiff JASPER by refusing to honor the right of JASPER to exercise his vested options and vested restricted stock units per the written severance agreement and obtain cash.  Plaintiff relied on MAXIM's representations contained in the agreement in order to resign his employment.   Defendant MAXIM's actions have created financial hardship on JASPER.

21.  As a proximate result of Defendant MAXIM's breach of the covenant of good faith and fair dealing, Plaintiff JASPER  has suffered and continues to suffer substantial losses, including the loss of being unable to exercise his earned and vested options as well as being forced to incur attorneys fees, costs and certain other incidental damages, all according to proof at trial.

WHEREFORE, Plaintiff JASPER prays for judgment against Defendant MAXIM as hereinafter set forth;

THIRD CAUSE OF ACTION
(FAILURE TO PAY WAGES -  LABOR CODE §200 Et. Seq.)

22.  Plaintiff JASPER  hereby adopts and incorporates by reference paragraphs 1 through 21, inclusive of this complaint, and makes them a part of this instant cause of action as though fully set forth herein.

23. The vested stock options and vested restricted stock units MAXIM gave to JASPER formed an integral part of JASPER's employment compensation and were thus "wages" within the definition of Labor Code §200.

24.  Pursuant to the severance agreement (contract) entered into between JASPER and

JASPER'S COMPLAINT                              5

1   MAXIM, MAXIM was required to permit Plaintiff JASPER to exercise his stock options and

2   restricted stock units.

3       25.  MAXIM, having repeatedly prevented Plaintiff JASPER from receiving his vested

4   stock options and restricted stock units, has denied Plaintiff his wages due him as of the date

5   JASPER first attempted to exercise his options on or about April 16, 2008.

6       26.  Failure to pay wages due and owing to Plaintiff also triggers the penalty provision of

7   California Labor Code §203 in an amount to be determined at trial.

8       27.  By requiring Plaintiff JASPER to file this lawsuit to collect his wages, MAXIM is

9   liable to pay attorney fees for said collection pursuant to California Labor Code §218.5

10      WHEREFORE, Plaintiff JASPER prays judgment against Defendant as hereinafter

11  alleged;

12

13                          FOURTH CAUSE OF ACTION
                                  (CONVERSION)

14

15      28.  Plaintiff JASPER  hereby adopts and incorporates by reference paragraphs 1 through

16  27, inclusive of this complaint, and makes them a part of this instant cause of action as though

17  fully set forth herein.

18      29.  From April 16, 2008, Plaintiff JASPER was entitled to collect monies from

19  MAXIM by exercising his options for vested stock and vested restricted stock units.

20      30.  From April 16, 2008, the sums that Plaintiff was entitled to obtain from his vested

21  options totaled in the millions of dollars.

22      31.  During the period from April 16, 2008  until the present,  Defendant MAXIM

23  retained said funds and stock described above and thus converted said sums to Defendant's own

24  use, and failed to permit Plaintiff JASPER to obtain said sums by exercising his options as

25  alleged above.

26      32.  Plaintiff JASPER has demanded the right to exercise his vested options as alleged

27  herein and obtain sums from Defendant MAXIM, but Defendant MAXIM failed and refused,

28

JASPER'S COMPLAINT                          6

1  and continues to fail and refuse, to permit Plaintiff JASPER to exercise his options and obtain

2  funds from said severance agreement.

3     33.  As a proximate result of Defendant MAXIM's conversion, Plaintiff JASPER has

4  suffered financial damages, has had to borrow money from third parties, and suffered other

5  financial losses, all in an amount according to proof at trial.

6     34.  Between the time of Defendant's conversion of the above-mentioned property to its

7  own use and the filing of this complaint, Plaintiff has had to expend funds to pursue this

8  converted property, all to Plaintiff's damage in an amount according to proof at trial.

9     35.  At the time, Defendant refused to honor its written agreement with Plaintiff and

10  committed the acts alleged herein, the defendant's acts alleged above were willful, wanton,

11  malicious, and oppressive, were undertaken with the intent to defraud, and were done with a

12  conscious disregard for the rights of Plaintiff JASPER, and were done with reckless indifference

13  and willful and conscious disregard for the rights of JASPER, and justify the awarding of

14  exemplary and punitive damages.

15     WHEREFORE, Plaintiff JASPER prays judgment against Defendant MAXIM as

16  hereinafter alleged;

17

18                    FIFTH CAUSE OF ACTION
                              FRAUD
19               (INTENTIONAL MISREPRESENTATION)

20     36.  Plaintiff JASPER  hereby adopts and incorporates by reference paragraphs 1 through

21  35, inclusive of this complaint, and makes them a part of this instant cause of action as though

22  fully set forth herein.

23     37. By Plaintiff signing the contract alleged herein and agreeing to resign and obtain the

24  options referenced in the severance agreement, Plaintiff understood that he would be

25  compensated as set forth in said agreement referenced herein.   Defendant MAXIM made

26  representations to Plaintiff JASPER by signing the agreement that it would provide financial

27  compensation to Plaintiff as specified in that agreement.   These representations were, in fact,

28

JASPER'S COMPLAINT                        7

1    false.

2          38.   The Defendants, and each of them, made the aforesaid representations with the

3    intention to deceive and defraud Plaintiff JASPER and/or with the expectation that JASPER

4    would act in reliance upon said representations.   When the Defendants made these

5    representations, MAXIM knew them to be false and made said representations to induce

6    JASPER to rely.

7          39.   Plaintiff JASPER did, in fact, reasonably rely on the defendant's false

8    representations by signing the contract, resigning his employment, and waiting to exercise his

9    options after the blackout period.

10          40.   The representations made by MAXIM's agents, namely Edwin Medlin were false.

11    The true facts were that MAXIM did not intend to offer JASPER any right to exercise said

12    vested stock options and vested restricted stock units.

13          41. Defendant ignored the express provisions of the contract, such as JASPER's being

14    able to exercise a number of Vested Options and Vested Restricted Stock Units as part of his

15    severance, that JASPER could exercise the Vested Options and Vested Restricted Stock Units in

16    accordance with their original terms of grant pursuant to the applicable stock option plan, stock

17    option agreements, and restricted stock unit agreements, and that JASPER's rights with respect

18    to such exercises and eventual sale shall be the same as those of all Maxim employees whose

19    employment with Maxim was terminated during the blackout period.

20          42. The Plaintiff, at the time these representations were made by the Defendant, and at

21    the time Plaintiff relied on Defendant's representations and signed the agreement, was ignorant

22    of the falsity of the defendant's representations and believed them to be true.  In reliance on

23    these representations, JASPER was induced to and did enter into contractual relations with

24    MAXIM for severance from the Defendant MAXIM and JASPER signed the severance

25    agreement with Defendant MAXIM.  Had JASPER known the actual facts, he would not have

26    taken such actions, nor would he have entered into any severance agreement with MAXIM.  The

27    reliance of JASPER was justified because MAXIM stated that it would honor said agreement

28

JASPER'S COMPLAINT                          8

1    and allow the exercise of the options.

2       43.  As a proximate result of the Defendants' fraudulent representations, Plaintiff

3    JASPER has suffered damages due to lost income and stock options, all in an amount according

4    to proof at trial.   Plaintiff further suffered humiliation, embarrassment, mental and emotional

5    distress and discomfort as the proximate result of the defendants' fraudulent representations, as

6    well as forcing him to incur attorney fees, costs and certain other incidental damages, all

7    according to proof.

8       44.  The actions of Defendants as alleged herein were done with malice and oppression,

9    and fraud, and in reckless disregard of Plaintiff JASPER's rights pursuant to the contract to

10   obtain further financial benefits he was entitled to receive   Specifically, Defendant and

11   Defendant's agents deceived Plaintiff into believing that he would receive further financial

12   compensation if he resigned and signed the severance agreement.  Plaintiff has been damaged in

13   an amount according to proof.   Plaintiff  also seeks punitive damages for defendants' actions as

14   alleged herein.

15       WHEREFORE, Plaintiff JASPER prays judgment against Defendants as hereinafter

16   alleged;

17                          SIXTH CAUSE OF ACTION
                          NEGLIGENT MISREPRESENTATION
18

19       45 .  Plaintiff JASPER  hereby adopts and incorporates by reference paragraphs 1

20   through 44, inclusive of this complaint, and makes them a part of this instant cause of action as

21   though fully set forth herein

22       46.  Prior to signing the contract and  accepting the terms of the contract offered by

23   DEFENDANT, the DEFENDANTS, and each of them, made representations to Plaintiff

24   JASPER as stated above in paragraph 37 above.  These representations were, in fact, false as

25   stated above.

26       47.  The Defendants made the aforesaid representations despite the fact that they knew

27   or should have known that such representations were, in fact, false.

28

JASPER'S COMPLAINT                    9

48. Plaintiff JASPER did, in fact, rely on the defendant's false representations by accepting the terms offered by Defendant in its severance agreement, and entering into contractual relations with defendant and resigning his employment and continuing to wait to exercise his vested options to a later date.

49. As a proximate result of the Defendants' fraudulent representations, JASPER has suffered damages due to lost income and monies.   Plaintiff JASPER further suffered humiliation, embarrassment, mental and emotional distress and discomfort as the proximate result of the defendants' fraudulent representations, as well as forcing him to incur attorney fees, costs and certain other incidental damages, all according to proof.

WHEREFORE, Plaintiff JASPER prays judgment against Defendant as hereinafter alleged;

## SEVENTH CAUSE OF ACTION
### UNFAIR BUSINESS PRACTICE
### VIOLATION OF BUSINESS AND PROFESSIONS CODE 17200

50 . Plaintiff JASPER  hereby adopts and incorporates by reference paragraphs 1 through 49, inclusive of this complaint, and makes them a part of this instant cause of action as though fully set forth herein.

51. Defendants conduct as described above constitutes an unfair business practice pursuant to California Business and Professions Code Section 17200 et. seq.

52. Pursuant to California Business and Professions Code Section 17200, Plaintiff JASPER seeks an order from the court requiring disgorgement of all profits wrongfully obtained by Defendants based on Defendants' illegal retention of monies belonging to JASPER.

WHEREFORE Plaintiff prays for judgment against Defendant as hereinafter alleged

### EIGHTH CAUSE OF ACTION
### UNJUST ENRICHMENT

53. Plaintiff JASPER  hereby adopts and incorporates by reference paragraphs 1 through 52, inclusive of this complaint, and makes them a part of this instant cause of action as though

JASPER'S COMPLAINT                              10

1    fully set forth herein.

2        54.  By performing the actions described above and keeping and converting funds

3    belonging to JASPER, Defendants  have unjustly profited by retaining funds belonging to

4    JASPER without justly compensating JASPER for sums which should have been tendered to

5    JASPER.   Thus Defendants have been unjustly enriched at the expense of JASPER.

6

7        WHEREFORE, Plaintiff JASPER  prays for damages as follows:

8        1.  For the full value of the funds converted by Defendants, plus interest at the legal rate

9    on the amount converted by Defendants.

10       2. For all general damages in an amount according to proof, together plus interest at the

11   legal rate on the amount of general damages;

12       3. For Special Damages, together with interest at the legal rate in an amount according

13   to proof.

14       4. For an order requiring Defendants to disgorge to JASPER all sums illegally converted

15   and unjustly held.

16       5. For punitive damages sufficient to deter future misconduct.

17       6. For all costs of suit incurred herein.

18       7. For attorney fees as allowed by law, such as California Code of Civil Procedure

19   Section 1021.5, California Labor Code §218.5

20       8. For such other and further relief as the court may deem proper or may order.

21   Dated: December 10, 2014            LAW OFFICES OF DANIEL RAY BACON

22

23                                      DANIEL RAY BACON
24                                      Attorney for Plaintiff
                                        CARL W. JASPER
25

26

27

28

JASPER'S COMPLAINT                    11

**EXHIBIT B**

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Daniel Ray Bacon, Esq. SB#103866
234 Van Ness Avenue
San Francisco, CA 94102
TELEPHONE NO.: 415 864-0907    FAX NO.: 415 864-0989
ATTORNEY FOR (Name): Plaintiff Carl W. Jasper

FOR COURT USE ONLY

FILED
DEC 10 2014
David H. Yamasaki, Clerk of the Superior Court
County of Santa Clara, California
By: _____ Deputy Clerk
W. Mendez

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara
STREET ADDRESS: 191 North 1st Street
MAILING ADDRESS: 191 North 1st Street
CITY AND ZIP CODE: San Jose    95113
BRANCH NAME:

CASE NAME: JASPER v. MAXIM

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) / [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 114CV274265  JUDGE:  DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[X] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

BY FAX

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.[X] monetary  b.[X] nonmonetary; declaratory or injunctive relief  c.[X] punitive
4. Number of causes of action (specify): EIGHT
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: December 10, 2014

DANIEL RAY BACON
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

CEB

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
      or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

FILED

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Daniel Ray Bacon                                    103866<br>234 Van Ness Avenue<br><br>San Francisco                          CA  94102<br>　TELEPHONE NO.: 415 864-0907　　　　FAX NO. *(Optional):* 415 864-0989<br>E-MAIL ADDRESS *(Optional):* bacondr@aol.com<br>ATTORNEY FOR *(Name):* Plaintiff Carl W. Jasper | FOR COURT USE ONLY<br><br>2015 JAN - 1 A 10: 38<br><br>David H. Yamasaki, Clerk of the Superior Court<br>County of Santa Clara, California<br>By_____<br>J. CAO-NGUYEN |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara<br>　STREET ADDRESS: 191 North 1st Street<br>　MAILING ADDRESS:<br>　CITY AND ZIP CODE: San Jose　　　　CA　　95113<br>　BRANCH NAME: |

| PLAINTIFF/PETITIONER: Carl W. Jasper<br><br>DEFENDANT/RESPONDENT: Maxim Integrated Products, Inc., et al |

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>114CV274265 |

BY FAX

TO *(insert name of party being served):* Maxim Integrated Products, Inc.

---

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: December 12, 2014

DANIEL RAY BACON
　　(TYPE OR PRINT NAME)　　　　　　　　　　　　　　　(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1.  [X]  A copy of the summons and of the complaint.
2.  [X]  Other *(specify):*
　　　　Alternative Dispute Resolution (ADR) Information Sheet; Civil Lawsuit Notice

*(To be completed by recipient):*

Date this form is signed:　January 2, 2015
Michael J. Ioannou on behalf of
Maxim Integrated Products, Inc.
　(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,　　　　(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
　ON WHOSE BEHALF THIS FORM IS SIGNED)　　　　　　ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |

CEB

**CASE NAME:   Carl W. Jasper vs. Maxim Integrated Products, Inc.**

**ACTION NO.:   114CV274265, Santa Clara County Superior Court**

FILED

2015 JAN -7 A 10: 38

David H. Yamasaki, Clerk of the Superior Court
County of Santa Clara, California
By: _____
J. CAO-NGUYEN

**PROOF OF SERVICE**

**METHOD OF SERVICE**

☒ First Class Mail          ☐ Facsimile          ☐ Messenger Service

☐ Overnight Delivery          ☐ E-Mail/Electronic Delivery

1. At the time of service I was over 18 years of age and not a party to this action.

2. My business address is 50 West San Fernando Street, Suite 1400, San Jose, County of Santa Clara, CA  95113-2429.

3. On January 2, 2015, I served the following documents:

    **Notice and Acknowledgment of Receipt-Civil (signed Acknowledgment of Receipt)**

4. I served the documents on the persons at the address below (along with their fax numbers and/or email addresses if service was by fax or email):

Daniel Ray Bacon
234 Van Ness Avenue
San Francisco, CA  94102
(415) 864-0907
bacondr@aol.com
Attorney for Plaintiff, Carl W. Jasper

5. I served the documents by the following means:

    a. ☒  By United States mail: I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses specified in item 4 and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid at the address listed in Paragraph 2 above.

    b. ☐  By overnight delivery: I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 4. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

    c. ☐  By messenger: I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 4 and providing them to a messenger for service.  (Separate declaration of personal service to be provided by the messenger.)

    d. ☐  By fax transmission: Based on an agreement between the parties and in conformance with Rule 2.306, and/or as a courtesy, I faxed the documents to the persons at the

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

4844-3138-3841.1

1  fax numbers listed in item 4.  No error was reported by the fax machine that I used.  A copy of the record of the fax transmission is attached.

2

3       e.  ☐  By email or electronic transmission:  Based on an agreement between the parties and/or as a courtesy, I sent the documents to the persons at the email addresses listed in item 4.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

4

5       I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

6

7  Date:   January 2, 2015 _____

8

9  Suzanne Carpenter _____        _____
   Type Name                                    Signature

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4844-3138-3841.1

- 2 -

**PROOF OF SERVICE**

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose