**EXHIBIT 3 (Part 2 of 3)**

due to allegedly misdated stock option grants, as follows:  Differences in the amounts

specified arise from the different sale prices and/or number of options attained by each

such director.  Within sixty (60) days after the Court enters the Scheduling Order, (i)

Wazzan shall pay a total of Two Hundred Sixty-Six Thousand, Seven Hundred and Fifty-

Eight Dollars ($266,758) for the benefit of Maxim; (ii) Bergman shall pay a total of

Three Hundred Seventy-Nine Thousand, Nine Hundred and Twenty-Nine Dollars

($379,929) for the benefit of Maxim; and (iii) Hagopian shall pay a total of Six Hundred

Twenty-Seven Thousand, Nine Hundred and Thirty-One Dollars ($627,931) for the

benefit of Maxim.  Further, within one hundred and eighty (180) days after the Court

enters the Scheduling Order, Wazzan shall pay an additional total of Two Hundred and

Thirty Thousand, Eight Hundred and Fifty-Five Dollars ($230,855) for the benefit of

Maxim (together with all contributions listed in this paragraph, collectively, the "Director

Defendants' Cash Contributions").  The Director Defendants' Cash Contributions shall

be deposited into an interest-bearing escrow account pursuant to the Escrow Agreement,

consistent with the terms of this Stipulation.  The Escrow Agreement shall provide that

within five (5) business days following the receipt of a payment instruction evidencing

the occurrence of both the Judgment and the California Dismissal Date the Escrow Agent

shall distribute to Maxim the Director Defendants' Cash Contributions and all interest

accrued thereon from the Effective Date to the date of distribution.

   (b)  Director Defendants incorrectly received vested and unexercised

stock options which allegedly were misdated and shall be repriced as indicated in the

following table.  Within five (5) business days following the California Dismissal Date,

Wazzan's, Bergman's, and Hagopian's vested and unexercised Maxim stock options,

which allegedly were misdated, shall be repriced as follows:

| Name | Option Number | Grant Date | Original Exercise Price | Number of Shares Granted | Number of Shares Unexercised & Vested | New Exercise Price |
|------|--------------|-----------|------------------------|-------------------------|---------------------------------------|-------------------|
| Wazzan | 973342 | 4/6/2001 | $35.45 | 12,000 | 12,000 | $46.55 |
| Bergman | 12169 | 10/1/2001 | $34.06 | 12,000 | 12,000 | $52.33 |
| Hagopian | 12170 | 10/1/2001 | $34.06 | 12,000 | 12,000 | $52.33 |
| Wazzan | 12172 | 10/1/2001 | $34.06 | 12,000 | 12,000 | $52.33 |
| Bergman | 19047 | 10/9/2002 | $21.35 | 12,000 | 12,000 | $41.02 |
| Hagopian | 19048 | 10/9/2002 | $21.35 | 12,000 | 12,000 | $41.02 |
| Wazzan | 19050 | 10/9/2002 | $21.35 | 12,000 | 12,000 | $41.02 |
| Wazzan | 23364 | 6/25/2003 | $33.85 | 8,000 | 8,000 | $36.19 |

       (c)    The stock options subject to re-pricing pursuant to paragraph

2.2(b) above shall not be exercised, transferred or assigned until six (6) business days

after the earlier of (i) the California Dismissal Date, or (ii) the date this Stipulation is

terminated or voided under paragraphs 8.2 – 8.5 below.

      2.3    Defendant Gifford's Contributions.

       (a)    Within sixty (60) days after the Court enters the Scheduling Order,

Gifford shall pay Six Million Dollars ($6,000,000) for the benefit of Maxim ("Gifford's

Cash Contribution"). Gifford's Cash Contribution shall be deposited into an interest-

bearing escrow account pursuant to the Escrow Agreement, consistent with the terms of

this Stipulation. The Escrow Agreement shall provide that within five (5) business days

following the receipt of a payment instruction evidencing the occurrence of both the

Judgment and the California Dismissal Date the Escrow Agent shall distribute to Maxim

Gifford's Cash Contribution and all interest accrued thereon from the Effective Date to

the date of distribution.

(b)    Within five (5) business days following the California Dismissal

Date, all of Gifford's currently vested and unexercised Maxim stock options shall be

cancelled by Maxim, as specifically identified below:

| Option Number | Grant Date | Exercise Price | Number of Shares Granted | Number of Shares Unexercised & Vested | Expiration Date |
|---|---|---|---|---|---|
| 966145 | 5/25/99 | $24.59 | 1,035,934 | 1,035,934 | 5/25/09 |
| 967543 | 5/15/00 | $57.81 | 1,729 | 1,729 | 5/15/10 |
| G971468 | 9/18/00 | $75.00 | 53,333 | 53,333 | 9/18/10 |
| I973289 | 1/30/01 | $58.13 | 1,720 | 1,720 | 1/30/11 |
| 010716 | 9/27/01 | $33.68 | 2,969 | 2,969 | 9/27/11 |
| 010717 | 9/27/01 | $33.68 | 797,031 | 567,031 | 9/27/11 |
| 016114 | 4/26/02 | $48.19 | 600,000 | 500,000 | 4/26/12 |
| 021584 | 5/12/03 | $39.82 | 800,000 | 730,000 | 5/12/13 |
| 025682 | 1/29/04 | $51.00 | 200,000 | 200,000 | 1/29/14 |

(c)    The stock options subject to cancellation pursuant to paragraph

2.3(b) above shall not be exercised, transferred or assigned until the earlier of (i) the date

they are cancelled under this Stipulation upon which such options cannot be exercised,

transferred or assigned and are extinguished, or (ii) the date this Stipulation is terminated

or voided under paragraphs 8.2 - 8.5 below. In the event any of the stock options subject

to cancellation under paragraph 2.3(b) would expire before the California Dismissal Date

(the "Expiring Options"), Gifford shall retain the right to assert a claim against Maxim,

with respect to each of such Expiring Options. Maxim reserves all rights under law and

equity to bar any such claim by Gifford including the extent and value of any claim.  In

the event that Maxim accepts some or all of Gifford's claim, any monies that Maxim

agrees should be paid toward the claim shall be deposited, as soon as practicable after the

expiration of the Expiring Options, into the same interest-bearing escrow account

pursuant to the Escrow Agreement, consistent with the terms of this Stipulation, that will

14

hold Gifford's Cash Contribution, and will be distributed to Maxim pursuant to the same instructions contained in the Escrow Agreement that will govern Gifford's Cash Contribution, as described in paragraph 2.3(a) above, and will not be distributed to Gifford unless this Stipulation is terminated or voided under paragraphs 8.2- 8.5 below. In the event that Gifford's Cash Contribution is distributed to Maxim pursuant to the Escrow Agreement, all reserved claims contained in this section shall be included in paragraphs 3.1 and 3.2 and released with prejudice.

   2.4    Defendant Jasper's Contributions.

       (a)    Jasper has previously asserted a claim to receive proceeds, with interest, from the offer by Maxim to buy-back certain then-outstanding and vested stock options, or the "goodwill payment," first announced by Maxim on October 4, 2007 (the "Jasper Buy-Back Claim"). Within five (5) business days after the California Dismissal Date, Jasper will surrender, without any further action by Jasper, a portion of the Jasper Buy-Back Claim, represented by 97,363 vested, unexercised stock options that were granted to Jasper on June 17, 1998 (as a portion of Option Number 963906) and carried an exercise price of $14.0625. At such time, any claims Jasper has against Maxim concerning those 97,363 options shall be released with prejudice.

       (b)    Plaintiffs, Jasper, and Maxim also acknowledge that the pendency and prosecution of the Action were substantial and material causal factors contributing to Mr. Jasper's decision to surrender voluntarily his rights to certain unvested options, restricted stock units, and other employee benefits in January 2007, which the parties agree had a value of approximately $2.5 million.

15

2.5     Any attempt to exercise, transfer or assign the stock options to be cancelled or re-priced pursuant to paragraphs 2.2(b) or 2.3(b) above, other than as provided in paragraphs 2.2(c) or 2.3(c) above, shall result in their automatic forfeiture.

2.6     In the event that Maxim common stock is affected by any stock dividend, stock split, reverse stock split, recapitalization, reorganization, merger, consolidation, split-up, spin-off, combination, repurchase or exchange of Maxim common stock, or other distribution (collectively, "Recapitalization or Reorganization") before the California Dismissal Date, the number of shares to be re-priced pursuant to paragraph 2.2(b) above and the new exercise price will be subject to a proportional adjustment to prevent dilution or amplification of the value of such re-priced shares.  The number of shares to be cancelled pursuant to paragraph 2.3(b) will also be subject to proportional adjustment for any Recapitalization or Reorganization to ensure cancellation of all shares affect by or resulting from such a Recapitalization or Reorganization.

2.7     All Defendants (including Nominal Defendant Maxim) represent that Maxim and the D&O Carriers have not indemnified (or agreed to otherwise reimburse or compensate, including in the form of "make whole" payments or increases in future remuneration), Defendants Wazzan, Bergman, Hagopian or Gifford with respect to any of the above cash contributions set forth in paragraphs 2.2(a) and 2.3(a) above, and all Defendants agree that Maxim and the D&O Carriers shall not do so in the future.

2.8     In the event that any of the D&O Carriers fail to fund their Insurance Contribution as provided for in paragraph 2.1 above, then Defendants shall reasonably pursue all rights available to them against the breaching D&O Carrier under the Insurance Agreement to enforce the Settlement.

16

2.9    In the event that any of the Director Defendants, Gifford, or Jasper fail to make their contributions as provided for in paragraphs 2.2 through 2.4 above, such breaching Defendant agrees to pay Plaintiffs and Maxim, all costs and expenses of enforcing the Settlement, including, without limitation, reasonable attorneys' fees and legal expenses, incurred or paid by Plaintiffs or Maxim, to the extent permitted by law.

2.10    The interest accrued on the Insurance Contributions, the Director Defendants' Cash Contributions and Gifford's Cash Contribution starting on the date such contributions are deposited in the interest-bearing escrow account until the Effective Date will accrue for the benefit of the D&O Carriers, Wazzan, Bergman, Hagopian and Gifford in proportion to each of these parties' contributions to the escrow account. Within five (5) business days after the Effective Date, the parties to the Escrow Agreement shall jointly notify the escrow agent of the Effective Date, attaching a copy of the Judgment, and request a written investment report setting forth the accrued interest on the contributions to the escrow account until the Effective Date. Based on the amount of accrued interest, the escrow agent shall calculate the amount of accrued interest due to each contributor to the escrow account in proportion to the amount initially contributed by each contributor to the escrow account. The parties to the Escrow Agreement will then further instruct the escrow agent in writing to disburse within five (5) days of receipt of such joint instructions, to each contributor to the escrow account, its portion of the interest accrued through the Effective Date.

2.11    Maxim agrees that it shall provide Plaintiffs' Counsel with copies of all Notices or other documents or information received by Maxim pursuant to the Escrow Agreement within 24 hours of Maxim's receipt of such Notices. Maxim also agrees that

17

with respect to any actions which Maxim may take pursuant to the Escrow Agreement, that prior to taking such actions it will confer with Plaintiffs' Counsel who will in good faith agree and consent to Maxim's contemplated actions as long as such action are consistent with the terms of this Stipulation.

      B.    Corporate Governance and Therapeutic Reforms.

    2.12   In addition to the benefits and recoveries set forth in Section 2(A) above, the Company and Defendants acknowledge that the remedial measures and changes set forth in Exhibit D hereto were either specifically agreed to as part of the settlement of this action or that the pendency and prosecution of this Action was a motivating factor in their enactment.

## III.   SCOPE OF SETTLEMENT & RELEASES

    3.     The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Action and any and all related claims as to any settling party or former party to this Action, or party that could have been named in this Action or any related action, including the California Litigations.

    3.1    Upon the Effective Date, except as provided in paragraph 3.3 and its subparagraphs below, Plaintiffs, (on their own behalf and derivatively on behalf of Maxim), Plaintiffs' Counsel, Maxim, and each and every Maxim shareholder claiming by, through, in the right of, derivatively, or on behalf of Maxim, shall and hereby do fully, finally, and forever release, relinquish, and discharge the Released Persons from any and all of the Released Claims.

    3.2    Upon the Effective Date, except as provided in paragraph 3.3 and its subparagraphs below, each of the Director Defendants, Gifford and Jasper, shall and hereby do fully, finally, and forever release, relinquish, and discharge the Plaintiffs,

18

Plaintiff's Counsel and Maxim, and their Related Persons, from any and all of the
Released Claims.

　3.3　　Notwithstanding Paragraphs 3, 3.1 and 3.2, nothing herein is intended to
or does release the following claims (the "Reserved Claims"), but without any agreement
or acknowledgement of their merits or lack thereof:

　3.3.1(a)　　Each of Maxim, the Director Defendants, Gifford, and Jasper shall
retain and reserve all of their respective claims or rights that may exist for
Indemnification and/or for advancement and payment and/or reimbursement to Maxim of
fees and costs arising under and pursuant to any Defendant's respective Indemnification
Agreement with Maxim, Maxim's by-laws, applicable law, equity or other contract, or
any entitlement to insurance coverage or insurance proceeds, and all rights to seek
contribution or equitable indemnification from any Related Person, in connection with
the Class Action and SEC v. Jasper, and any other litigation, matter, proceeding, or
investigation (including any new, additional DOJ, Special Committee, and SEC
investigations or proceedings) commenced after the date of this Stipulation; and

　3.3.1(b)　　Each Defendant shall retain and reserve his respective rights and
claims under any Defendant's respective Indemnification Agreement with Maxim,
Maxim's by-laws, applicable law, equity or other contract to an advancement of, and to
be indemnified for, any remaining fees and costs reasonably incurred after the Effective
Date in connection with the DOJ Investigation, the SEC Proceedings (other than SEC v.
Jasper, which is addressed in paragraph 3.3.1(a) above), the California Litigations, the
Special Committee Review, and any other litigation, matter, proceeding, or investigation
(including any new, additional DOJ, Special Committee, and SEC investigations or

19

proceedings) commenced after the date of this Stipulation, with Maxim retaining and reserving all of its rights and claims under the Indemnification Agreements, Maxim's by-laws, applicable law, equity or other contract as to advancement and/or reimbursement of any such future fees and cost; provided, however, in no event shall Maxim recoup or otherwise seek reimbursement for any fees or costs advanced prior to the Effective Date to any of the Defendants in connection with the DOJ Investigation, the SEC Proceedings or the Special Committee Review except as an offset against affirmative claims by any Defendant seeking to reopen in any way Indemnification directly in connection with the DOJ Investigation, the SEC Proceedings or the Special Committee Review.

    3.3.2   Gifford's Additional Reserved Claim and Rights.

        (a)   Gifford reserves his previously asserted claim against Maxim to receive proceeds, with interest, from the offer by Maxim to buy-back certain then-outstanding and vested stock options granted on October 27, 1997, or the "goodwill payment," announced by Maxim on October 4, 2007 (the "Gifford Buy-Back Claim"). Maxim continues to deny the Gifford Buy-Back Claim and reserves all available defenses at law or equity to the Gifford Buy-Back Claim. Maxim and Gifford have agreed to an alternative dispute resolution process to resolve the Gifford Buy-Back Claim. At Gifford's election, the Gifford Buy-Back Claim may be resolved either through binding arbitration or through litigation, but in no event shall Gifford withhold performance under Paragraph 2.3 of this Stipulation pending any such alternative dispute resolution, binding arbitration, or litigation.

        (b)   Gifford and Maxim reserve their respective rights as expressly provided in the Memorandum of Understanding, dated January 5, 2007 (the "MoU"), and

20

the Retirement Agreement, dated January 26, 2007, other than any known or unknown claims relating to (i) payment of deferred compensation (MoU at ¶ 11); (ii) payment of a bonus (MoU at ¶ 8); (iii) accelerated vesting of certain unvested stock options and restricted stock units (MoU at ¶ 6); and (iv) Maxim's alleged wrongful termination of Gifford's part-time employment agreement, which claims are hereby expressly waived and released with prejudice.

    3.3.3  Jasper's Additional Reserved Claim and Rights.

        (a)    Jasper reserves his previously asserted claim against Maxim to receive proceeds, with interest, from the offer by Maxim to buy-back certain then-outstanding and vested stock options, or the "goodwill payment," first announced by Maxim on October 4, 2007 (the "Jasper Buy-Back Claim") except as to the 97,363 vested, unexercised Maxim stock options that were granted on June 17, 1998 and which Jasper has agreed to surrender and release with prejudice all claims related to those 97,363 options as set forth in paragraph 2.4(a) above.

        (b)    Jasper and Maxim reserve their respective rights as expressly provided as part of Jasper's January 31, 2007 Severance Agreement other than any known or unknown claims relating to the 97,363 vested, unexercised Maxim stock options that were granted on June 17, 1998 and which Jasper has agreed to surrender and release with prejudice all claims related to those 97,363 options as set forth in paragraph 2.4(a) above.

        (c)    In connection with Jasper's Additional Reserved Claim as expressly excluded from the release at paragraph 3.3.3(a) and (b), Maxim continues to deny such Reserved Claim and reserves all available defenses at law or equity.

3.4     In granting the Releases herein, the Parties acknowledge that they have

read California Civil Code Section 1542, which reads as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
> CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
> FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS
> OR HER SETTLEMENT WITH THE DEBTOR.

The Parties expressly waive and relinquish all rights and benefits under Section 1542 and

any law or legal principle of similar effect in any jurisdiction with respect to the release

of unknown or unsuspected claims, including but not limited to Delaware law.  In

addition, Plaintiffs and Maxim, by operation of the Judgment, are deemed to have

expressly waived and relinquished all rights and benefits under Section 1542 and any law

or legal principle of similar effect in any jurisdiction with respect to the release of

unknown or unsuspected claims.  The Parties acknowledge that the foregoing waiver was

separately bargained for and a key element of the settlement of which this release is a

material and essential part of this Settlement.  The Parties acknowledge that they may

hereafter discover facts different from, or in addition to, those which they now know or

believe to be true with respect to the claims they have released, and agree that the

releases contained in this Stipulation shall be and remain effective in all respects.

3.5     By operation of a Judgment, and upon the Effective Date, the Parties,

including Maxim, agree not to institute, maintain or prosecute any and all Released

Claims against any and all of the Released Persons, or any Party, or their respective

attorneys, and shall be permanently and finally enjoined without the necessity of posting

bond from commencing or prosecuting any actions or other proceedings asserting any or

all of the Released Claims against any or all of the Released Persons or any Party, or their respective attorneys, subject only to the exclusions specified herein.

## IV.   ATTORNEYS' FEES AND EXPENSES

4.1     Plaintiffs' Counsel shall apply to the Court for attorneys' fees of no more than $15,000,000, plus reimbursement of expenses of no more than $500,000 incurred in the prosecution of this Action, both to be paid by Maxim (the "Attorneys' Fee and Expense Award").  Maxim retains the right to object to the amount of the Attorneys' Fee and Expense Award, but agrees to pay the Attorneys' Fee and Expense Award as allowed by the Court.  Plaintiffs' Counsel will also apply to the Court for compensation not to exceed $5,000 for each Plaintiff (the "Plaintiffs' Compensation Award") to be paid from the amount awarded for the Attorneys' Fee and Expense Award.

4.2     Final resolution of the Attorneys' Fee and Expense Award or Plaintiffs' Compensation Award shall not be a precondition to the dismissal with prejudice of the Action and any application or litigation concerning the Attorneys' Fee and Expense Award or Plaintiffs' Compensation Award may be considered and resolved separately from the Settlement.

4.3     The Parties agree that the Attorneys' Fee and Expense Award will be paid by Maxim to Krislov & Associates, Ltd. and Shapiro, Haber & Urmy, LLP, as receiving agent for Plaintiffs' Counsel, within five calendar (5) days after the Settlement Fund (as defined in the Escrow Agreement) is released to Maxim under the Escrow Agreement. Except as expressly provided herein, Plaintiffs and Plaintiffs' Counsel shall bear their own fees, costs and expenses and no Defendant shall assert any claim for expenses, costs and fees against Plaintiffs or Plaintiffs' Counsel.

23

4.4     Except as provided herein, Defendants and their respective Related Parties shall have no responsibility for, and no liability whatsoever with respect to, the fee allocation among Plaintiffs' Counsel.

## V.     SCHEDULING ORDER AND SETTLEMENT HEARING

5.1     Within five (5) business days after the execution of the Stipulation, the Parties shall jointly submit the Stipulation together with its related documents to the Court, and shall apply to the Court to enter the Scheduling Order, in the form attached hereto as Exhibit A.

5.2     Maxim shall be responsible for the reproduction and distribution of the Notice, in the form attached hereto as Exhibit B. No later than forty-five (45) days prior to the Settlement Hearing, Maxim shall cause the Notice to be distributed, by First-class Mail, to all persons who are record holders of common stock of Maxim at the respective addresses currently set forth in the Company's stock records. Furthermore, Maxim shall use reasonable efforts to give notice to all beneficial owners of common stock of the Company (a) by providing additional copies of the Notice to any record holder requesting the Notice for the purposes of distribution to such beneficial owners, and by (b) posting a copy of the Notice on Maxim's corporate website. All of the expenses related to the distribution of the Notice shall be paid by Maxim, whether or not the Settlement is approved.

## VI.     STANDSTILL AGREEMENT AND STAY OF PROCEEDINGS

6.1     Except as provided herein, pending the final determination of whether the Settlement should be approved, all Parties to this Action (including, Plaintiffs, Individual Defendants and Maxim) agree not to institute, commence, prosecute, continue, or in any way participate in, whether directly, representatively, individually, derivatively on behalf

24

of Maxim, or in any other capacity, any action or other proceeding asserting any Released

Claims.

6.2     Within thirty (30) days after the Court enters the Scheduling Order, or as

otherwise agreed with Plaintiffs' Counsel, Maxim and the Individual Defendants, shall

move to stay the California Litigations, and any other non-governmental or non-

regulatory litigation arising from or related to the Released Claims.  All counsel shall use

their reasonable best efforts, and cooperate with each other, to secure a stay of the

California Litigations.

## VII.   DISMISSAL OF ACTIONS

7.1     If the Settlement is approved by the Court, the Parties shall promptly

request the Court to enter the Judgment in the form attached hereto as Exhibit C.

7.2     Within thirty (30) days after the Effective Date, or as otherwise agreed

with Plaintiffs' Counsel, Maxim and the Individual Defendants shall move to dismiss

with prejudice each of the California Litigations, and any other non-governmental or non-

regulatory litigation arising from or related to the Released Claims, based on the doctrine

of res judicata, collateral estoppel, the effect of the releases provided by this Stipulation,

or any similar theory.  Maxim and the Individual Defendants shall take all necessary

steps (including seeking reconsiderations and/or appeals of any contrary decisions or

actions) to obtain the dismissals, with prejudice, of each of the California Litigations.

## VIII.   EFFECTIVE DATE OF SETTLEMENT, OR TERMINATION, OR VOIDABILITY

8.1     This Settlement shall become effective on the Effective Date.

8.2     In the event that the Settlement is not approved by the Court, or vacated or

modified on appeal, or if the Judgment is not entered by the Court or does not become

Final, or if any other conditions necessary for this Settlement to become effective fail to occur, then any of the Parties may terminate the Stipulation and withdraw from the Settlement by providing written notice of such action to undersigned counsel for all of the Parties within thirty (30) calendar days after the failure of such condition, in which case, the Stipulation, including the Releases, shall be voided and all monies deposited in escrow pursuant to paragraphs 2.1, 2.2(a), 2.3(a) or 2.3(c) above shall be returned to the Party or Parties and D&O Carriers that contributed said monies, together with accrued interest attributable to their respective contributions.

        8.3     If either (a) the United States District Court for the Northern District of California or the Santa Clara County Superior Court, after Maxim and the Individual Defendants have moved to dismiss each of the California Actions pursuant to paragraph 7.2 above, declines or refuses to enter the dismissal sought from it and all reasonable efforts to obtain interlocutory review reversing said order(s) are unsuccessful, or (b) any of the California Dismissals are reversed on appeal, then this Stipulation, including the Releases, may be voided by any of the Parties by providing written notice of such action within thirty (30) days of such event.  If this Stipulation is voided pursuant to this paragraph, all monies deposited into escrow pursuant to paragraphs 2.1, 2.2(a), 2.3(a) and 2.3(c) above, shall be returned to the Party or Parties and D&O Carriers that contributed said monies, together with accrued interest attributable to their respective contributions, and all Parties shall be obligated to jointly move the Court to vacate the Judgment pursuant to Del. Ch. R. 60.  In the event this Stipulation is voided pursuant to this paragraph, the return of monies deposited into escrow pursuant to paragraphs 2.1, 2.2(a),

2.3(a) and 2.3(c) shall be made pursuant to the terms of the Escrow Agreement and shall not be contingent on first obtaining relief from the Judgment.

8.4    If prior to the funding of the escrow as provided in paragraph 2.1. above, one or more D&O Carriers makes an assignment for the benefit of creditors, or if a receiver of any such party's property shall be appointed, or if a petition in bankruptcy or other similar proceeding under any law for relief of debtors shall be filed by or against any such party, then this Stipulation, including the Releases, shall be voidable at the sole option of the Plaintiffs.

8.5    In the event that the Settlement is terminated pursuant to paragraph 8.2 or voided pursuant to paragraph 8.3, and all monies deposited in escrow or otherwise for the settlement of the Action have been returned to the Party or Parties and D&O Carriers that contributed said monies, together with accrued interest attributable to their respective contributions, the Settlement and any actions taken in connection therewith shall become null and void for all purposes, and all negotiations, transactions, and proceedings connected with it: (i) shall be without prejudice to the rights of any Party hereto; (ii) shall not be deemed to be or construed as evidence of, or an admission by any Party of any fact, matter or thing; and (iii) shall not be admissible in evidence or be used for any purpose in any subsequent proceedings in the Action or any other action or proceeding. The Parties shall be deemed to have reverted to their respective status in the Action as of the date and time immediately prior to the execution of the Stipulation, and, except as otherwise expressly provided, the Parties shall proceed in all respects as if the Stipulation and any related orders had not been entered.

27

8.6     In the event this Stipulation is terminated under paragraph 8.2 or voided under paragraphs 8.3 or 8.4, paragraphs 8.2 through 8.5 shall survive.

IX.     MISCELLANEOUS PROVISIONS

9.1     Cooperation of the Parties.  The Parties acknowledge that it is their intent to consummate this Settlement, and agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their reasonable efforts to accomplish the foregoing terms and conditions of the Stipulation.

9.2     Acknowledgment of Adequate Consideration.  The Parties acknowledge, represent and warrant to each other that the terms of the Settlement are such that each of the Parties is to receive adequate consideration in exchange for consideration given.

9.3     No Admissions.  Neither the Stipulation nor the Settlement, nor any provision contained herein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of the validity or lack of validity of any Released Claims, or any reserved claims, or any wrongdoing or liability of the Parties or any of their Related Persons; (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Parties or any of their Related Persons in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal; or (c) is or may be alleged or mentioned so as to contravene clause (a) above in any litigation or other action unrelated to the enforcement of the Stipulation. Notwithstanding the foregoing, on or after the Effective Date, Maxim and any of the Individual Defendants may file the Stipulation or any judgment or order of the Court related hereto in the California Litigations, or any other action that may be brought

28

against them in order to support a defense or a counterclaim based on *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion, or similar defense or counterclaim; and on or after the date the Scheduling Order is entered, Maxim and any of the Individual Defendants may file the Stipulation of Settlement in any of the California Litigations in order to effectuate the stay(s) set forth in Paragraph 6.2 above.

9.4     Costs. Except as otherwise expressly provided herein, the Parties shall bear their own costs.

9.5     Entire Agreement. The Stipulation and all documents executed pursuant hereto constitute the entire agreement between the Parties, with respect to the Settlement of the Action and supersede any and all prior negotiations, discussions, agreements, or undertakings, whether oral or written, with respect to the Settlement of the Action.

9.6     Amendment. This Stipulation may be amended or modified only by a written instrument signed by counsel to all Parties.

9.7     Counterparts. The Stipulation may be executed in one or more counterparts, and all such counterparts together shall be deemed to be one and the same instrument.

9.8     Binding Effect. The Stipulation shall be binding upon, and inure to the benefit of all Parties, their successors and assigns. The Stipulation is not intended, and shall not be construed, to create rights in or confer benefits on any other Persons, and there shall not be any third-party beneficiaries hereto, except as expressly provided hereby with respect to such aforementioned Persons who are not Parties hereto.

9.9    Judicial Enforcement.   The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Stipulation and the Settlement, and the Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of the Stipulation and Settlement.

9.10    Choice of Law.   The Stipulation shall be governed by the laws of the State of Delaware, without regard to Delaware's conflicts of law principles.

9.11    Warranty of Authority.   Each counsel or person executing the Stipulation or any of the related documents on behalf of any Party hereto hereby warrants that such Person has the full authority to do so.

9.12    Waiver of Breach.   The Parties may not waive or vary any right hereunder except by an express written waiver or variation. Any failure to exercise or any delay in exercising any of such rights, or any partial or defective exercise of such rights, shall not operate as a waiver or variation of that or any other such right. The waiver by one Party of any breach of the Stipulation by another Party shall not be deemed a waiver of any other prior or subsequent breach of the Stipulation.

9.13    Fair Construction.   The Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it is recognized as the result of arm's length negotiations between the Parties, and all Parties have contributed substantially and materially to the preparation of the Stipulation.

9.14    No Assignment of Claims.   Plaintiffs hereby represent and warrant that they have not assigned any rights, claims, or causes of action that were asserted or could

30

have been asserted in connection with, under or arising out of any of the claims being settled or released herein.

9.15 No Party or its counsel shall make any application for sanctions, pursuant to Rule 11 of the Court of Chancery Rules or other court rule or statute, with respect to any claims or defenses in this Action. The Defendants and Maxim will not assert that the litigation was filed in violation of Rule 11, and they agree that the litigation is being settled voluntarily by the Defendants and Maxim after consultation with competent legal counsel and after discovery into the underlying facts and strength of the derivative claims which has been integral to the fashioning of an appropriate settlement.

9.16 Press Release. Any Party may issue a press release announcing the Settlement so long as such release is consistent with the terms of this Stipulation. Any Party issuing a press release that makes reference to any other Party will give the referenced Party a courtesy copy of the portion of the press release which references that Party 48 hours in advance of the issuance of the press release. No Party is obligated to modify its press release after giving that notice.

9.17 Facsimile and Scanned Signatures. Any signature to the Stipulation, to the extent signed and delivered by means of a facsimile machine or electronically scanned and sent via email, shall be treated in all manner and respects as an original signature and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person. At the request of a Party to the Stipulation, any other Party to the Stipulation so executing and delivering this document by means of a facsimile machine or via email shall re-execute original forms thereof and deliver them to the requesting Party. No Party to the Stipulation shall raise the use of a facsimile

31

machine or email to deliver a signature or the fact that any signature or agreement was transmitted or communicated through the use of facsimile machine as a defense to the formation or the enforceability of the Stipulation and each such Person forever waives any such defense.

9.18   Extensions of Time. Without further order of the Court, the Parties hereto may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation. The Parties have caused the Stipulation to be duly executed and delivered by their counsel of record.

9.19   The following exhibits are attached hereto and incorporated herein by reference:

(a)     Exhibit A:  Scheduling Order

(b)     Exhibit B:  Notice

(c)     Exhibit C: Judgment; and

(d)     Exhibit D: Corporate Governance and Therapeutic Reforms

IT IS HEREBY AGREED by the undersigned as dated below.

Dated: _September 11_, 2008   KRISLOV & ASSOCIATES, LTD.

By _Clint Krislov_
Clinton A. Krislov
Attorneys for Plaintiffs Walter E. Ryan, Jr.,
and Donna Conrad

Dated: _____, 2008   SHAPIRO, HABER & URMY, LLP

By_____
Edward F. Haber
Attorneys for Plaintiffs Walter E. Ryan, Jr.,
and Donna Conrad

Dated: _September 15_, 2008   ROSENTHAL, MONHAIT & GODDESS, P.A.

By_____
Norman M. Monhait (#1040)
Attorneys for Plaintiffs Walter E. Ryan, Jr.,
and Donna Conrad

Dated: _____, 2008   QUINN EMANUEL URQUHART OLIVER &
HEDGES LLP

By_____
John M. Potter
Attorneys for Individual Defendants James R.
Bergman, B. Kipling Hagopian, A.R. Frank
Wazzan, Michael J. Byrd, Tunc Doluca, Eric
Karros, M.D. Sampels

Dated: _____, 2008   POTTER ANDERSON & CORROON LLP

By_____
Peter J. Walsh (#2437)
Attorneys for Individual Defendants Tunc
Doluca, Michael J. Byrd, James R. Bergman,
B. Kipling Hagopian, A.R. Frank Wazzan,
Eric Karros, M.D. Sampels

33

Dated: _____, 2008   KRISLOV & ASSOCIATES, LTD.


By_____
   Clinton A. Krislov
   Attorneys for Plaintiffs Walter E. Ryan, Jr.,
   and Donna Conrad

Dated: _9/18/08_, 2008   SHAPIRO, HABER & URMY, LLP


By_____
   Edward F. Haber
   Attorneys for Plaintiffs Walter E. Ryan, Jr.,
   and Donna Conrad

Dated: _____, 2008   ROSENTHAL, MONHAIT & GODDESS, P.A.


By_____
   Norman M. Monhait (#1040)
   Attorneys for Plaintiffs Walter E. Ryan, Jr.,
   and Donna Conrad

Dated: _____, 2008   QUINN EMANUEL URQUHART OLIVER &
                                HEDGES LLP


By_____
   John M. Potter
   Attorneys for Individual Defendants James R.
   Bergman, B. Kipling Hagopian, A.R. Frank
   Wazzan, Michael J. Byrd, Tunc Doluca, Eric
   Karros, M.D. Sampels

Dated: _____, 2008   POTTER ANDERSON & CORROON LLP


By_____
   Peter J. Walsh (#2437)
   Attorneys for Individual Defendants Tunc
   Doluca, Michael J. Byrd, James R. Bergman,
   B. Kipling Hagopian, A.R. Frank Wazzan,
   Eric Karros, M.D. Sampels

33

Dated: _____, 2008   KRISLOV & ASSOCIATES, LTD.

By_____
Clinton A. Krislov
Attorneys for Plaintiffs Walter E. Ryan, Jr.,
and Donna Conrad

Dated: _____, 2008   SHAPIRO, HABER & URMY, LLP

By_____
Edward F. Haber
Attorneys for Plaintiffs Walter E. Ryan, Jr.,
and Donna Conrad

Dated: _____, 2008   ROSENTHAL, MONHAIT & GODDESS, P.A.

By_____
Norman M. Monhait (#1040)
Attorneys for Plaintiffs Walter E. Ryan, Jr.,
and Donna Conrad

Dated: _____, 2008   QUINN EMANUEL URQUHART OLIVER &
HEDGES LLP

By_____
John M. Potter
Attorneys for Individual Defendants James R.
Bergman, B, Kipling Hagopian, A.R. Frank
Wazzan, Michael J. Byrd, Tunc Doluca, Eric
Karros, M.D. Sampels

Dated: _____, 2008   POTTER ANDERSON & CORROON LLP

By_____
Peter J. Walsh (#2437)
Attorneys for Individual Defendants Tunc
Doluca, Michael J. Byrd, James R. Bergman,
B. Kipling Hagopian, A.R. Frank Wazzan,
Eric Karros, M.D. Sampels

33

Dated: _____, 2008   ROPERS, MAJESKI, KOHN & BENTLEY


By_____
    Michael J. Ioannou
    Attorneys for Nominal Defendant Maxim
    Integrated Products, Inc.

Dated: _____, 2008   ARCHER & GREINER, P.C.


By_____
    "J" Jackson Shrum (#4757)
    Attorneys for Nominal Defendant Maxim
    Integrated Products, Inc.

Dated: _9 / u_____, 2008   IRELL & MANELLA LLP


By_____
    David Siegel
    Attorneys for Defendant John F. Gifford

Dated: _____, 2008   RICHARDS, LAYTON & FINGER


By_____
    Gregory P. Williams (#2168)
    Attorneys for Defendant John F. Gifford

Dated: _____, 2008   LATHAM & WATKINS LLP


By_____
    David M. Friedman
    Attorneys for Defendant Carl W. Jasper

Dated: _____, 2008   ABRAMS & LASTER LLP


By_____
    Kevin G. Abrams (#2375)
    Attorneys for Defendant Carl W. Jasper

34

Dated: _____, 2008   ROPERS, MAJESKI, KOHN & BENTLEY

By_____
    Michael J. Ioannou
    Attorneys for Nominal Defendant Maxim
    Integrated Products, Inc.

Dated: _____, 2008   ARCHER & GREINER, P.C.

By_____
    "J" Jackson Shrum (#4757)
    Attorneys for Nominal Defendant Maxim
    Integrated Products, Inc.

Dated: _____, 2008   IRELL & MANELLA LLP

By_____
    David Siegel
    Attorneys for Defendant John F. Gifford

Dated: _September 11_, 2008   RICHARDS, LAYTON & FINGER

By_____
    Gregory P. Williams (#2168)
    Attorneys for Defendant John F. Gifford

Dated: _____, 2008   LATHAM & WATKINS LLP

By_____
    David M. Friedman
    Attorneys for Defendant Carl W. Jasper

Dated: _____, 2008   ABRAMS & LASTER LLP

By_____
    Kevin G. Abrams (#2375)
    Attorneys for Defendant Carl W. Jasper

34

Dated: _____, 2008   ROPERS, MAJESKI, KOHN & BENTLEY

By_____
Michael J. Ioannou
Attorneys for Nominal Defendant Maxim
Integrated Products, Inc.

Dated: _____, 2008   ARCHER & GREINER, P.C.

By_____
"J" Jackson Shrum (#4757)
Attorneys for Nominal Defendant Maxim
Integrated Products, Inc.

Dated: _____, 2008   IRELL & MANELLA LLP

By_____
David Siegel
Attorneys for Defendant John F. Gifford

Dated: _____, 2008   RICHARDS, LAYTON & FINGER

By_____
Gregory P. Williams (#2168)
Attorneys for Defendant John F. Gifford

Dated: ___9/15___, 2008   LATHAM & WATKINS LLP

By_____
David M. Friedman
Attorneys for Defendant Carl W. Jasper

Dated: _____, 2008   ABRAMS & LASTER LLP

By_____
Kevin G. Abrams (#2375)
Attorneys for Defendant Carl W. Jasper

34

Dated: _September 16_, 2008   ROPERS, MAJESKI, KOHN & BENTLEY

By _Michael J. Ioannou_
Michael J. Ioannou
Attorneys for Nominal Defendant Maxim
Integrated Products, Inc.

Dated: _____, 2008   ARCHER & GREINER, P.C.

By_____
"J" Jackson Shrum (#4757)
Attorneys for Nominal Defendant Maxim
Integrated Products, Inc.

Dated: _____, 2008   IRELL & MANELLA LLP

By_____
David Siegel
Attorneys for Defendant John F. Gifford

Dated: _____, 2008   RICHARDS, LAYTON & FINGER

By_____
Gregory P. Williams (#2168)
Attorneys for Defendant John F. Gifford

Dated: _____, 2008   LATHAM & WATKINS LLP

By_____
David M. Friedman
Attorneys for Defendant Carl W. Jasper

Dated: _September 15_, 2008   ABRAMS & LASTER LLP

By _Kevin G. Abrams_
Kevin G. Abrams (#2375)
Attorneys for Defendant Carl W. Jasper

34

Dated: _____, 2008    ROPERS, MAJESKI, KOHN & BENTLEY


By_____
Michael J. Ioannou
Attorneys for Nominal Defendant Maxim
Integrated Products, Inc.

Dated: _____, 2008    ARCHER & GREINER, P.C.


By_____
J. Jackson Shrum (#4757)
Attorneys for Nominal Defendant Maxim
Integrated Products, Inc.

Dated: _____, 2008    IRELL & MANELLA LLP


By_____
David Siegel
Attorneys for Defendant John F. Gifford

Dated: _____, 2008    RICHARDS, LAYTON & FINGER


By_____
Gregory P. Williams (#2168)
Attorneys for Defendant John F. Gifford

Dated: _____, 2008    LATHAM & WATKINS LLP


By_____
David M. Friedman
Attorneys for Defendant Carl W. Jasper

Dated: _____, 2008    ABRAMS & LASTER LLP


By_____
Kevin G. Abrams (#2375)
Attorneys for Defendant Carl W. Jasper


34

EFiled: Sep 16 2008 6:27PM EDT
Transaction ID 21521556
Case No. 2213-CC

# EXHIBIT A

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| WALTER E. RYAN, JR., and DONNA CONRAD, in the right of and for the benefit of MAXIM INTEGRATED PRODUCTS, INC., | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) ) |
| | ) |
| JOHN F. GIFFORD, CARL W. JASPER, TUNC DOLUCA, MICHAEL J. BYRD, JAMES R. BERGMAN, B. KIPLING HAGOPIAN, A.R. FRANK WAZZAN, ERIC P. KARROS and M.D. SAMPELS, | ) ) ) ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| MAXIM INTEGRATED PRODUCTS, INC., | ) |
| | ) |
| Nominal Defendant. | ) |

Civil Action No. 2213-CC

## SCHEDULING ORDER WITH RESPECT
## TO NOTICE AND SETTLEMENT HEARING

**WHEREAS**, the Parties to the above-captioned action (the "Action") have

entered into a Stipulation of Compromise and Settlement dated September 16, 2008 (the

"Stipulation") which sets forth the terms and conditions for the proposed settlement and

dismissal with prejudice of the Action (the "Settlement"), subject to review and approval

by this Court pursuant to Delaware Court of Chancery Rule 23.1 upon notice to the

shareholders of Nominal Defendant Maxim Integrated Products, Inc. ("Maxim");

**NOW**, upon application and consent of the parties, after review and consideration

of the Stipulation filed with the Court and the Exhibits attached thereto,

**IT IS HEREBY ORDERED** this 18th day of September, 2008 as follows:

1

1.     A hearing (the "Settlement Hearing") shall be held on Monday, November 24, 2008, at 2:30 p.m. in the Court of Chancery Courthouse, 34 The Circle, Georgetown, DE 19947, to: (a) determine whether the proposed Settlement, on the terms and conditions provided for in the Stipulation is fair, reasonable and adequate and in the best interests of Maxim and its shareholders; (b) determine whether the Court should finally approve the Settlement and enter a Final Order and Judgment  (the "Final Judgment") as provided in the Stipulation dismissing the Action with prejudice and extinguishing and releasing the Released Claims (as defined in the Stipulation); (c) hear and determine any objections to the proposed Settlement; (d) rule on the application of Plaintiffs' Counsel for its Attorneys' Fee and Expense Award as well as a Plaintiffs' Compensation Award (both as defined in the Stipulation); and (e) rule on such other matters as the Court may deem appropriate.

2.     The Settlement Hearing may be adjourned by the Court from time to time without further notice to anyone other than the parties to the Action.

3.     The Court reserves the right to approve the Settlement at or after the Settlement Hearing with such modifications as may be consented to by the parties to the Stipulation and without further notice.

4.     The Court approves, in form and content, the Notice of Pendency and Settlement of Action (the "Notice") filed by the parties with the Stipulation as Exhibit "B" and finds that the giving of notice substantially in the manner set forth herein meets the requirements of Chancery Court Rule 23.1 and due process, and is the best notice practicable under the circumstances.  No later than forty-five (45) days prior to the Settlement Hearing, Maxim shall cause the Notice to be distributed, by First-class Mail,

2

to all persons who are record holders of common stock of Maxim at the respective

addresses currently set forth in the Company's stock records. Furthermore, Maxim shall

use reasonable efforts to give notice to all beneficial owners of common stock of the

Company (a) by providing additional copies of the Notice to any record holder requesting

the Notice for the purposes of distribution to such beneficial owners, and by (b) posting a

copy of the Notice on Maxim's corporate website.   All of the expenses related to the

distribution of the Notice shall be paid by Maxim, in accordance with the terms of the

Stipulation.

    5. On or before the date of the Settlement Hearing, Maxim shall file

appropriate proof of mailing of the Notice and other Notice procedures in accordance

with this Scheduling Order.

    6. As will be set forth in the Notice, any record or beneficial

stockholder of the Company who objects to the Settlement, the judgment proposed to be

entered, and/or the application for an award of attorneys' fees and expenses and

Plaintiffs' Compensation Award, or who otherwise wishes to be heard ("Objector"), may

appear in person or by his, her, or its attorney at the Settlement Hearing and present any

evidence or argument that may be proper and relevant; provided, however, that no

Objector shall be heard or entitled to contest the approval of the terms and conditions of

the Settlement, or, if approved, the judgment to be entered thereon, unless he, she, or it

has, no later than ten (10) days before the Settlement Hearing (unless the Court in its

discretion shall thereafter otherwise direct, upon application of such person and for good

cause shown), filed with the Register in Chancery, Court of Chancery, 34 The Circle,

Georgetown, Delaware 19947, and served (by hand, first class mail, or express service)

on Plaintiffs' and Defendants' counsel, at the addresses below, the following: (i) proof of

current ownership of Maxim stock, (ii) a notice of the Objector's intention to appear, (iii)

a detailed statement of the objections to any matter before the Court, and (iv) a detailed

statement of all of the grounds therefor and the reasons for the Objector's desiring to

appear and to be heard, as well as all documents or writings which the Objector desires

the Court to consider.

Norman M. Monhait, Esq.
Rosenthal, Monhait & Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899

*Attorneys for Plaintiffs*

"J" Jackson Shrum, Esq.
Archer & Greiner, P.C.
300 Delaware Avenue
Suite 1370
Wilmington, DE 19801

*Attorneys for Nominal Defendant Maxim Integrated Products, Inc.*

Peter J. Walsh, Jr., Esq.
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899

*Attorneys for Defendants Tunc Doluca, Michael J. Byrd, James R.*
*Bergman, B. Kipling Hagopian, A.R. Frank Wazzan, Eric Karros,*
*M.D. Sampels*

4

Kevin G. Abrams, Esq.
Abrams & Laster LLP
Brandywine Plaza West
1521 Concord Pike, Suite 303
Wilmington, DE 19803

*Attorneys for Defendant Carl W. Jasper*

Gregory P. Williams, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, DE 19899-0551

*Attorneys for Defendant John F. Gifford*

7.      Any person or entity of any nature who fails to object in the

manner prescribed above shall be deemed to have waived such objection (including the

right to appeal), unless the Court in its discretion allows such objection to be heard at the

Settlement Hearing, and forever shall be barred from raising such objection in this or any

other action or proceeding or otherwise contesting the Settlement or any application for

the Attorneys' Fee and Expense Award or Plaintiffs' Compensation Award, but shall

otherwise be bound by the Final Judgment to be entered and the releases to be given.

8.      In the event that the Settlement is not approved by the Court, or is

terminated or voided as provided in Stipulation, the Settlement and any actions taken in

connection therewith shall become null and void for all purposes, and all negotiations,

transactions, and proceedings connected with it: (i) shall be without prejudice to the

rights of any Party thereto; (ii) shall not be deemed to be or construed as evidence of, or

an admission by any Party of any fact, matter or thing; and (iii) shall not be admissible in

evidence or be used for any purpose in any subsequent proceedings in the Action or any

other action or proceeding. The Parties shall be deemed to have reverted to their

respective status in the Action as of the date and time immediately prior to the execution

5

of the Stipulation, and, except as otherwise expressly provided, the Parties shall proceed in all respects as if the Stipulation and any related orders had not been entered and the Court shall enter a modified Scheduling Order.

    9.  All discovery and other proceedings in this Action (except as may be necessary to carry out the terms and conditions of the proposed Settlement) are hereby stayed and suspended until further order of the Court. Except as provided in the Stipulation, pending the final determination of whether the Settlement should be approved, all Parties to the Action (including Plaintiffs, Defendants, and Maxim) are hereby enjoined against instituting, commencing, prosecuting, continuing or in any way participating in, whether directly, representatively, individually, derivatively on behalf of Maxim, or in any other capacity, any action or other proceeding asserting any Released Claims (as defined in the Stipulation).

_William B. Chandler III_
Chancellor William B. Chandler III

6

EFiled: Sep 16 2008 6:27PM EDT
Transaction ID 21521556
Case No. 2213-CC

# EXHIBIT B

**Exhibit B**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| WALTER E. RYAN, JR., and DONNA CONRAD, in the right of and for the benefit of MAXIM INTEGRATED PRODUCTS, INC., <br><br>          Plaintiffs, <br><br> v. <br><br> JOHN F. GIFFORD, CARL W. JASPER, TUNC DOLUCA, MICHAEL J. BYRD, JAMES R. BERGMAN, B. KIPLING HAGOPIAN, A.R. FRANK WAZZAN, ERIC P. KARROS and M.D. SAMPELS, <br><br>          Defendants, <br><br> and <br><br> MAXIM INTEGRATED PRODUCTS, INC., <br><br>          Nominal Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 2213-CC |

## NOTICE OF PENDENCY AND SETTLEMENT OF ACTION

TO: ALL CURRENT STOCKHOLDERS OF MAXIM INTEGRATED PRODUCTS, INC. (TRADING SYMBOL: MXIM)

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS WILL BE AFFECTED BY THE LEGAL PROCEEDINGS IN THIS LITIGATION. IF THE COURT APPROVES THE PROPOSED SETTLEMENT, YOU WILL BE FOREVER BARRED FROM CONTESTING THE FAIRNESS, REASONABLENESS AND ADEQUACY OF THE PROPOSED SETTLEMENT, OR PURSUING THE CLAIMS DEFINED HEREIN.

### I. WHY ARE YOU RECEIVING THIS NOTICE?

The purpose of this Notice is to tell you about: (i) a lawsuit (the "Action") in the Delaware Court of Chancery (the "Court") brought on behalf of Maxim Integrated Products, Inc. ("Maxim" or the "Company"); (ii) a proposal to settle the Action (the "Settlement") as provided in a Stipulation of Compromise and Settlement (the "Stipulation"); and (iii) your right, among other things, to attend and participate in a hearing to be held on _____, 2008, at

_____, in the Court of Chancery Courthouse, 34 The Circle, Georgetown, DE 19947 (the "Settlement Hearing").

This Notice describes the rights you may have under the Settlement and what steps you may, but are not required to, take concerning the Settlement. If the Court approves the Settlement, the parties will ask the Court to approve a Final Order and Judgment that would end the Action.

**THE FOLLOWING DESCRIPTION DOES NOT CONSTITUTE FINDINGS OF THE COURT. IT IS BASED ON STATEMENTS OF THE PARTIES AND SHOULD NOT BE UNDERSTOOD AS AN EXPRESSION OF ANY OPINION OF THE COURT AS TO THE MERITS OF ANY OF THE CLAIMS OR DEFENSES RAISED BY ANY OF THE PARTIES.**

## II. BACKGROUND: WHAT IS THIS CASE ABOUT?

Plaintiffs Walter E. Ryan, Jr. and Donna Conrad (collectively, the "Plaintiffs") are current Maxim shareholders. They are represented by Krislov & Associates, Ltd.; Shapiro, Haber & Urmy, LLP; and Rosenthal, Monhait & Goddess, P.A. (collectively, "Plaintiffs' Counsel").

Nominal Defendant Maxim is a Delaware corporation with its principal place of business in Sunnyvale, California. Defendants John F. Gifford, Carl W. Jasper, Tunc Doluca, Michael J. Byrd, James R. Bergman, B. Kipling Hagopian, A.R. Frank Wazzan, Eric P. Karros, and M.D. Sampels (collectively, the "Individual Defendants") are present or former officers and/or directors of Maxim.

The Plaintiffs allege in their Amended Complaint, among other things, that between 1997 and 2006, the Individual Defendants breached their fiduciary duties and/or were unjustly enriched by the granting of stock options that were misdated in various respects in violation of Maxim's shareholder-approved stock option plans filed with the United States Securities and Exchange Commission (the "SEC"). These plans generally prohibited, with some exceptions, the granting of stock options with exercise prices less than the fair market value of Maxim's common stock, measured by the publicly traded closing price of Maxim stock on the date of the grant.

Defendants have denied and continue to deny that they have committed any act or omission giving rise to any breach of fiduciary duty, liability, and/or violation of law.

In addition to this Action, there are currently six other shareholder derivative actions that have been file on behalf of Maxim in state and federal courts in California (collectively, the "California Litigations"). There is also a separate class action related to Maxim's stock options that is pending in federal court in California (the "Class Action").

This Action was commenced on June 12, 2006. Over the course of this litigation, Plaintiffs' Counsel conducted extensive discovery related to Maxim's stock option grant practices. Their review included, among other things: consultation with outside experts and consultants; review of information from SEC proceedings involving Maxim's stock option

2

practices; review of hundreds of thousands of documents produced by numerous parties; and depositions of certain defendants and Maxim employees.

### III.   HOW WAS THE SETTLEMENT REACHED?

After extensive litigation and settlement efforts, on April 12, 2008, the parties convened a mediation before the Honorable Daniel Weinstein (Ret.) of JAMS, a highly experienced mediator of complex disputes. After the April 12, 2008 mediation, the Parties continued to have additional settlement discussions among themselves and with Judge Weinstein, including a further mediation on May 8, 2008, and they eventually reached agreement on the terms reflected in the Stipulation.

**THE COURT HAS NOT FINALLY DETERMINED THE MERITS OF PLAINTIFFS' CLAIMS OR THE DEFENSES THERETO. THIS NOTICE DOES NOT IMPLY THAT THERE HAS BEEN OR WOULD BE ANY FINDING OF VIOLATION OF THE LAW BY THE INDIVIDUAL DEFENDANTS OR THAT RECOVERY COULD BE HAD IN ANY AMOUNT IF THE ACTION WERE NOT SETTLED.**

### IV.   WHAT ARE THE TERMS OF THE SETTLEMENT?

Under the Settlement, Maxim is to receive the following cash and non-cash benefits:

(a)     Defendants' insurance carriers and Defendants Gifford, Wazzan, Bergman, and Hagopian shall pay $28,505,473 in cash (collectively, the "Cash Contributions"), as follows:

- Maxim's Directors & Officers insurance carriers ("D&O Carriers") shall severally pay on behalf of the Released Persons and for the benefit of Maxim, each D&O Carriers' respective portion of Twenty-One Million Dollars ($21,000,000) (the "Insurance Contributions").

- Defendants Wazzan, Bergman and Hagopian shall each make cash contributions sufficient to remediate excess gains each such director incorrectly received due to allegedly misdated stock option grants, as follows: Differences in the amounts specified arise from the different sale prices and/or number of options attained by each such director.  (i) Wazzan shall pay Four Hundred Ninety-Seven Thousand, Six Hundred and Thirteen Dollars ($497,613) for the benefit of Maxim; (ii) Bergman shall pay Three Hundred Seventy-Nine Thousand, Nine Hundred and Twenty-Nine Dollars ($379,929) for the benefit of Maxim; and (iii) Hagopian shall pay a total of Six Hundred Twenty-Seven Thousand, Nine Hundred Thirty-One Dollars ($627,931) for the benefit of Maxim (collectively, the "Director Defendants' Cash Contributions").

- Defendant Gifford shall pay Six Million Dollars ($6,000,000) for the benefit of Maxim ("Gifford's Cash Contribution").

(b) Defendants Gifford, Wazzan, Bergman, Hagopian and Jasper have agreed to cancel, reprice or surrender claims with respect to the following stock options (the "Option Remediation"):

- Repricing of unexercised and vested options, held by Defendants Wazzan, Bergman, and Hagopian, to purchase a total of 92,000 shares of Maxim stock.

- Cancellation of unexercised and vested options, held by Defendant Gifford, to purchase 3,092,716 shares of Maxim stock.

- Surrender by Defendant Jasper of a claim to proceeds from options to purchase 97,363 shares of Maxim stock.

(c) Maxim has agreed to implement or has implemented corporate governance and therapeutic reforms either specifically agreed to as part of the settlement of this Action or that the pendency and prosecution of this Action was a motivating factor in their enactment, which will continue in force for 4 years.

In addition, Jasper and Maxim acknowledge in the Stipulation that the prosecution of the Action was a substantial and material causal factor contributing to Mr. Jasper's earlier decision to surrender voluntarily his rights (which the parties agree are worth approximately $2.5 million) to certain other unvested options, restricted stock units, and other employee benefits.

Because the Action was brought for the benefit of Maxim, benefits from the Settlement will go to Maxim. Individual Maxim shareholders will not receive any direct payment from the Settlement.

If the Court approves the Settlement of this Action, the Defendants will then request that the California courts dismiss the pending California Litigations with prejudice because the Settlement finally resolved all claims of Maxim arising out of the facts on which the Action is based. The Settlement is contingent on receiving approval from the Delaware Chancery Court. If the California Litigations are not finally dismissed, any party may void the Settlement.

## V.  WHAT CLAIMS WILL THE SETTLEMENT RELEASE?

*Under the Settlement, the following releases will occur, except as noted below:*

Plaintiffs, (on their own behalf and derivatively on behalf of Maxim), Plaintiffs' Counsel, Maxim, and each and every Maxim shareholder claiming by, through, in the right of, derivatively, or on behalf of Maxim, shall fully, finally, and forever release, relinquish, and discharge the Released Persons (as defined below) from any and all of the Released Claims (as defined below).

Each of the Individual Defendants, shall fully, finally, and forever release, relinquish, and discharge the Plaintiffs, Plaintiff's Counsel and Maxim, and their Related Persons (as defined below), from any and all of the Released Claims.

4

The "Released Persons" include: each and all of the Individual Defendants, and each and all of the current and former officers, directors, and employees of Maxim, and each and all of their respective Related Persons. For the avoidance of doubt, "Released Persons" also includes all current or former officers, directors or employees of Maxim that were, are, or could have been named in the Action, the California Litigations or any related action.

"Related Persons" include: with respect to any Person, such Person's past or present spouse or other members of their immediate families, or any trust of which any Person is the settling party or which is for the benefit of such Person and/or member of his or her family, and each of a Person's present and former parent entities, subsidiaries (direct or indirect) and affiliates, and each of their respective present and former shareholders, officers, directors, employees, agents, representatives, insurers, reinsurers, heirs, executors, personal or legal representatives, estates, administrators, predecessors, successors and assigns.

The "Released Claims" include: any and all claims of any nature or description under state or federal law (including but not limited to claims arising under Delaware law, California law, and the federal securities laws, any rules or regulations promulgated thereunder, or otherwise), liabilities, obligations, causes of action, expenses, damages, losses, or any other matters, whether known or unknown, foreseen or unforeseeable, certain or contingent, which relate in any manner to or arise out of the allegations, facts, events, transactions, acts, occurrences, statements, representations, misrepresentations, omissions or any other matter, thing or cause whatsoever, or any series thereof, that: (1) have been or could have been asserted in the Action or any of the California Litigations; (2) were recited, described or referenced in the Action, the California Litigations, the SEC's proceedings related to Maxim's stock option practices, or Maxim's internal Special Committee review related to its option practices; or (3) otherwise arise out of or relate to Maxim's stock option practices or any matters alleged in the complaints in the Action; provided, however, that the Released Claims shall not include the claims asserted in the Class Action, any reserved claims (as summarized below and described in more detail in the Stipulation), or any claims that may arise out of a breach of the Stipulation.

*The following claims are reserved and not being released as part of the Settlement:*

As described more fully in the Stipulation, and with important exceptions also described more fully in the Stipulation, each of Maxim and the Individual Defendants shall retain and reserve all of their respective claims or rights that may exist with regard to Indemnification and/or advancement and payment and/or reimbursement to Maxim of fees and costs arising under and pursuant to any Defendant's respective Indemnification Agreement with Maxim, Maxim's by-laws, applicable law, equity, contract, or any entitlement to insurance coverage or insurance proceeds, and all rights to seek contribution or equitable indemnification from any Related Person, in connection with certain proceedings and matters related to the Action.

Gifford reserves his previously asserted claim against Maxim to receive proceeds, with interest, from the offer by Maxim to buy-back certain then-outstanding and vested stock options granted on October 27, 1997, or the "goodwill payment," announced by Maxim on October 4, 2007 (the "Gifford Buy-Back Claim"). Maxim continues to deny the Gifford Buy-Back Claim and reserves all available defenses at law or equity to the Gifford Buy-Back Claim. Maxim and Gifford have agreed to an alternative dispute resolution process to resolve the Gifford Buy-Back

5

Claim. At Gifford's election, the Gifford Buy-Back Claim may be resolved either through binding arbitration or through litigation, but in no event shall Gifford withhold performance under certain relevant parts of the Stipulation pending any such alternative dispute resolution, binding arbitration, or litigation.

Gifford and Maxim reserve their respective rights as expressly provided in the Memorandum of Understanding, dated January 5, 2007 (the "MoU"), and the Retirement Agreement, dated January 26, 2007, other than any known or unknown claims relating to (i) payment of deferred compensation (MoU at 11); (ii) payment of a bonus (MoU at 8); (iii) accelerated vesting of certain unvested stock options and restricted stock units (MoU at 6); and (iv) Maxim's alleged wrongful termination of Gifford's part-time employment agreement, which claims are hereby expressly waived and released with prejudice.

Jasper reserves his previously asserted claim against Maxim to receive proceeds, with interest, from the offer by Maxim to buy-back certain then-outstanding and vested stock options, or the "goodwill payment," first announced by Maxim on October 4, 2007, except as to the 97,363 vested, unexercised Maxim stock options that were granted on June 17, 1998 and which Jasper has agreed to surrender and release with prejudice all claims related to those 97,363 options. Maxim continues to deny claims reserved by Jasper and reserves all available defenses at law or equity.

Jasper and Maxim reserve their respective rights as expressly provided as part of Jasper's January 31, 2007 Severance Agreement other than any known or unknown claims relating to the 97,363 vested, unexercised Maxim stock options that were granted on June 17, 1998 and which Jasper has agreed to surrender and release with prejudice all claims related to those 97,363 options.

## VI.  WHAT ARE THE REASONS FOR THE SETTLEMENT?

Plaintiffs and Plaintiffs' Counsel believe that the claims asserted in the Action have merit and that Plaintiffs' Counsel's investigation supports the claims asserted. Plaintiffs and Plaintiffs' Counsel have taken into account the uncertain outcome and the risk of any litigation, especially in complex shareholder litigation such as the Action, as well as the difficulties and delays inherent in such litigation. Plaintiffs and Plaintiffs' Counsel also are mindful of inherent problems of proof associated with, and possible defenses to, the violations asserted in the Action. In addition, Plaintiffs and Plaintiffs' Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against the Individual Defendants through trial and appeals. Based upon these considerations, among others, and having been informed by the extensive discovery, together with legal and expert analyses, Plaintiffs and Plaintiffs' Counsel have concluded that the terms and conditions of the Stipulation confer substantial benefits upon and are in the best interests of Maxim and its shareholders.

Defendants have denied and continue to deny that they have committed any act or omission giving rise to any breach of fiduciary duty, liability, and/or violation of law, and state that they are entering into this Stipulation to eliminate the burden and expense of further litigation. This Stipulation shall not be construed or deemed to be evidence of, or an admission or concession on the part of any Party with respect to the validity or infirmity of any claim of,

any fault or liability or wrongdoing or damage whatsoever, or of any and all defenses asserted in the Action or any related derivative or class action involving or in any way relating to Maxim's stock option practices or related issues.

Maxim has considered the merits of Plaintiffs' allegations, the Defendants' defenses, and the legal fees and costs it has incurred and will continue to incur as a result of this Action. Maxim agreed to settle the Action pursuant to the terms described herein because it believes that it is desirable for Maxim to have the Action settled on these terms and it is desirable for Maxim to avoid incurring additional legal fees and to avoid the distractions associated with litigation.

## VII.  HOW WILL THE ATTORNEYS GET PAID?

If the Court approves the Settlement, Plaintiffs' Counsel shall apply to the Court for attorneys' fees of no more than $15,000,000, plus reimbursement of expenses of no more than $500,000 incurred in the prosecution of this Action, both to be paid by Maxim (the "Attorneys' Fee and Expense Award").  Maxim retains the right to object to the amount of the Attorneys' Fee and Expense Award, but agrees to pay the Attorneys' Fee and Expense Award as allowed by the Court.  Plaintiffs' Counsel will also apply to the Court for compensation not to exceed $5,000 for each Plaintiff (the "Plaintiffs' Compensation Award") to be paid from the amount awarded for the Attorneys' Fee and Expense Award.

Final resolution of the Attorneys' Fee and Expense Award or Plaintiffs' Compensation Award shall not be a precondition to the dismissal with prejudice of the Action and any application or litigation concerning the Attorneys' Fee and Expense Award or Plaintiffs' Compensation Award may be considered and resolved separately from the Settlement.

## VIII.  WHEN WILL THE SETTLEMENT HEARING TAKE PLACE?

The Court has scheduled a Settlement Hearing to be held on _____, 2008, at _____ .m. in the Court of Chancery Courthouse, 34 The Circle, Georgetown, DE 19947.

The purpose of the Settlement Hearing is to: (i) determine whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable and adequate and in the best interests of Maxim and its shareholders and should be approved by the Court; (ii) determine whether a Final Order and Judgment should be entered dismissing the Action with prejudice and extinguishing and releasing almost all related claims; (iii) determine whether the Court should approve the application of Plaintiffs' Counsel for an award of attorneys' fees and expenses as well as a Plaintiffs' Compensation Award; (iv) hear and determine any objections to the proposed Settlement; and (v) rule on such other matters as the Court may deem appropriate.

The Court may adjourn Settlement Hearing from time to time without further notice to anyone other than the parties to the Action.  The Court reserves the right to approve the Settlement at or after the Settlement Hearing with such modifications as may be consented to by the parties to the Stipulation and without further notice.

7